# DEPARTMENT OF PUBLIC SAFETY ET AL. *v.* STATE BOARD OF LABOR RELATIONS ET AL.
## (SC 18259)

Rogers, C. J., and Norcott, Katz, Palmer, Zarella and McLachlan, Js.*

*This case was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Norcott, Katz, Palmer, Zarella and McLachlan. Although Justice McLachlan was not present when the case was argued before the court, he read the record, briefs and transcript of oral argument prior to participating in this decision.

Argued February 11—officially released June 8, 2010

*Diana Garfield,* with whom were *Lisa S. Lazarek,* and, on the brief, *Patrick J. McHale,* for the appellants (plaintiffs).

*Karen K. Buffkin,* general counsel, with whom were *Alexandra M. Gross,* assistant general counsel, and, on the brief, *Jaye Bailey,* former general counsel, for the appellee (named defendant).

*Robert J. Krzys,* for the appellee (defendant Connecticut State Employees Association, SEIU Local 2001).

*Opinion*

ROGERS, C. J. The issue presented by this appeal is whether the trial court properly concluded that the employees of the named plaintiff, the department of public safety (department),[1] in the job classifications of state police lieutenant and state police captain (employees), are not managerial employees under Gen-

---

[1] Because the department, in its appeal, was acting through the office of labor relations of the office of policy and management, that office also is a plaintiff in this action.

eral Statutes § 5-270 (g)[2] and, therefore, have the right to bargain under the state employee collective bargaining law. General Statutes §§ 5-270 through 5-280. The named defendant, the state board of labor relations (board), concluded that the employees were not managerial employees and, accordingly, granted the petition of the defendant Connecticut State Employees Association, SEIU Local 2001 (union), seeking certification as their exclusive bargaining representative. The department appealed from that decision to the trial court pursuant to General Statutes § 4-183 and the trial court dismissed the appeal. The department then filed this appeal.[3] We reverse the judgment of the trial court on the ground that the trial court applied an improper legal standard in determining that the board properly had determined that the employees were not managerial employees.

The record reveals the following procedural history. The union filed a petition with the board seeking certification as the exclusive bargaining representative of a new bargaining unit consisting of state police lieutenants and state police captains. The board ordered an election among those employees, to which the department objected on the ground that the employees did not have the right to bargain under the state employee

[2] General Statutes § 5-270 (g) provides: " 'Managerial employee' means any individual in a position in which the principal functions are characterized by not fewer than two of the following, provided for any position in any unit of the system of higher education, one of such two functions shall be as specified in subdivision (4) of this subsection: (1) Responsibility for direction of a subunit or facility of a major division of an agency or assignment to an agency head's staff; (2) development, implementation and evaluation of goals and objectives consistent with agency mission and policy; (3) participation in the formulation of agency policy; or (4) a major role in the administration of collective bargaining agreements or major personnel decisions, or both, including staffing, hiring, firing, evaluation, promotion and training of employees."

[3] The department appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

collective bargaining law because, among other reasons, they met at least two of the criteria set forth in § 5-270 (g) and, therefore, were managerial employees. After the employees voted in favor of union representation, the board conducted a hearing on the department's objections. The board concluded that the employees met the criterion set forth in § 5-270 (g) (1), but did not meet any of the other three statutory criteria. Specifically, with respect to subdivision (2) of § 5-270 (g), the board concluded that "[t]he evidence clearly supports a conclusion that the responsibility for the development, implementation and evaluation of goals and objectives consistent with the [department's] mission is placed at a level above that of captain. While these employees may be asked for their opinions and in select cases, individual majors and other superiors may rely heavily on them, they simply do not have and cannot exercise the level of independent judgment and involvement necessary to meet this criterion." With respect to subdivision (3) of § 5-270 (g), the board concluded that "no evidence or testimony established that these employees are involved in any way, other than the occasional suggestion, in the formulation of [department] policy." With respect to subdivision (4) of § 5-270 (g), the board concluded that "[t]here is no question that none of the . . . employees has any role in the administration of collective bargaining agreements." Accordingly, the board concluded that the employees were not managerial employees, dismissed the department's objections and certified the union as the employees' representative.

Thereafter, the department refused to bargain with the union[4] and the union filed an unfair labor practice

---

[4] The department was required to refuse to negotiate with the union in order to obtain judicial review of the board's decision certifying the union as the employees' bargaining representative. See *Windsor* v. *Windsor Police Dept. Employees Assn., Inc.*, 154 Conn. 530, 535, 227 A.2d 65 (1967) ("there is statutory provision for an appeal from an order of the board only when that order is a final order of the board and when an unfair labor practice is alleged to have occurred").

complaint with the board. The board ruled in favor of the union and ordered the department to negotiate with it. The department then appealed to the trial court. The trial court concluded that the language of § 5-270 (g) was plain and unambiguous and that the board properly had determined that subdivisions (2) and (3) of § 5-270 (g) require that "the employees at issue exercise a level of independent judgment . . . ."[5] Accordingly, the trial court dismissed the appeal. This appeal followed.

On appeal, the department claims that the trial court improperly deferred to the board's interpretation of § 5-270 (g) (2) and (3) and concluded that the employees were not managerial employees because the statute provides that managerial employees must exercise independent judgment in carrying out the enumerated functions. The board and the union contend that the trial court properly interpreted the statute and properly applied it to the facts of this case. We conclude that the trial court improperly construed § 5-270 (g) to include a requirement that the managerial employees exercise independent judgment in carrying out the principal functions listed in subdivisions (2) and (3).

At the outset, we set forth the standard of review. "According to our well established standards, [r]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the

---

[5] The court also concluded that the department had "failed to show that the . . . board's conclusion [that the employees did not satisfy subdivision (4) of § 5-270 (g)] lacks substantial evidence." On appeal, the department has abandoned its claim that the employees meet this criterion.

evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . It is well settled [however] that we do not defer to the board's construction of a statute— a question of law—when . . . the [provisions] at issue previously ha[v]e not been subjected to judicial scrutiny or when the board's interpretation has not been time tested." (Internal quotation marks omitted.) *Christopher R.* v. *Commissioner of Mental Retardation*, 277 Conn. 594, 603, 893 A.2d 431 (2006). A conclusion that an agency's interpretation of a statute is entitled to deference, however, "does not end [our] inquiry. We also must determine whether the [board's] interpretation is reasonable. . . . In so doing, we apply our established rules of statutory construction." (Citation omitted.) *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 407, 944 A.2d 925 (2008); see also *Vincent* v. *New Haven*, 285 Conn. 778, 784 n.8, 941 A.2d 932 (2008) ("rule of deference applies only when agency 'has consistently followed its construction over a long period of time, *the statutory language is ambiguous*, and the agency's interpretation is reasonable' " [emphasis in original]).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z[6] directs us first to consider the

---

[6] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Vincent* v. *New Haven,* supra, 285 Conn. 784–85.

In the present case, the department contends that, because the board's interpretation of § 5-270 (g) has not been time-tested and previously has not been subject to judicial scrutiny, the board was not entitled to deference and our review is plenary. Specifically, the department points out that the board has interpreted § 5-270 only twice; see *In re Connecticut State Employees Assn., SEIU Local 2001,* Conn. Board of Labor Relations Decision No. 4070 (August 17, 2005); *In re Protective Services Employees Coalition, AFL-CIO,* Conn. Board of Labor Relations Decision No. 3145 (October 27, 1993); and that neither decision was subject to judicial review. The board and the union contend that, because the board concluded in these two decisions that certain police lieutenants who worked for various agencies and captains in the department of correction were not managerial employees under § 5-270 (g), and because the department was the employer in both decisions and did not challenge the board's decisions, the board's interpretation of the statute is time-tested and is entitled to deference.[7] We agree with the department.

---

[7] Neither the board nor the union contends that the department's claim was barred by the doctrine of collateral estoppel.

In *Vincent* v. *New Haven,* supra, 285 Conn. 783–84
and n.8, this court concluded that the compensation
review board's interpretation of General Statutes (Rev.
to 1989) § 31-306 was not entitled to deference because
it had applied the interpretation in only two cases, the
oldest of which had been decided in 1999, and neither
decision had been subject to judicial review. See also
*Christopher R.* v. *Commissioner of Mental Retarda-
tion,* supra, 277 Conn. 603 n.9 ("[t]wo isolated cases
do not indicate a time tested interpretation"); cf. *Curry*
v. *Allan S. Goodman, Inc.,* supra, 286 Conn. 405–407
(when commission on human rights and opportunities
had consistently interpreted General Statutes § 46a-60
in thirteen decisions over twelve years, several of which
had been adopted by various trial courts, interpretation
was entitled to deference); *Hartford* v. *Hartford Munic-
ipal Employees Assn.,* 259 Conn. 251, 268, 788 A.2d 60
(2002) (deferring to interpretation of board to resolve
possible ambiguity when board had presented evidence
of consistent interpretation of statute for more than
twenty-five years). In the present case, the board has
interpreted § 5-270 (g) only twice and neither decision
was subject to judicial scrutiny. We conclude, therefore,
that, as in *Vincent* and *Christopher R.*, the board's inter-
pretation is not entitled to deference.[8] Accordingly, our
review is plenary.

---

[8] The dissent agrees with this conclusion, but concludes that, because the
legislature has amended § 5-270 (g) several times since the department's
decision in *In re Protective Services Employees Coalition, AFL-CIO,* supra,
Conn. Board of Labor Relations Decision No. 3145, we should presume that
the legislature acquiesced in the decision. We recognize that "in certain
circumstances, the legislature's failure to make changes to a long-standing
agency interpretation implies its acquiescence to the agency's construction
of the statute." (Internal quotation marks omitted.) *Longley* v. *State Employ-
ees Retirement Commission,* 284 Conn. 149, 164, 931 A.2d 890 (2007). We
have concluded, however, that the board's interpretation of § 5-270 (g) (2)
is not time-tested. In addition, we conclude that that interpretation is incon-
sistent with the plain language of the statute. We believe that these considera-
tions rebut any presumption of legislative acquiescence.

We begin our analysis with the language of § 5-270 (g), which provides: " 'Managerial employee' means any individual in a position in which the principal functions are characterized by not fewer than two of the following, provided for any position in any unit of the system of higher education, one of such two functions shall be as specified in subdivision (4) of this subsection: (1) Responsibility for direction of a subunit or facility of a major division of an agency or assignment to an agency head's staff; (2) development, implementation and evaluation of goals and objectives consistent with agency mission and policy; (3) participation in the formulation of agency policy; or (4) a major role in the administration of collective bargaining agreements or major personnel decisions, or both, including staffing, hiring, firing, evaluation, promotion and training of employees."

Thus, under § 5-270 (g) (2) and (3), employees in a particular position are managerial employees if the enumerated functions constitute the position's "principal functions . . . ." Although the phrase "principal functions" is not statutorily defined, we conclude that no reasonable interpretation of the phrase carries the connotation that employees in a managerial position must exercise independent judgment in carrying out the enumerated functions. Rather, the phrase connotes that the enumerated functions must be the position's most important, consequential or influential functions. See Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) (defining "principal" as "most important, consequential, or influential: CHIEF"); see also Black's Law Dictionary (9th Ed. 2009) (defining "principal" as "[c]hief; primary; most important").[9] Thus, contrary to

[9] "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly. General Statutes § 1-1 (a). If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as

the board's suggestion that, if the phrase principal function is to have any meaning, it must mean that managerial employees exercise independent judgment,[10] it is reasonable to conclude that the legislature intended that the board could consider the amount of time that the employees in the position devote to each function, whether an employee's ability to carry out an enumerated function is a prerequisite for being hired to the position and whether the failure of an employee in the position to carry out an enumerated function would have important consequences to the employer.[11] We conclude, therefore, that although the application of the phrase principal functions to any particular position will require an exercise of judgment as to which functions of a particular position are the most important, consequential and influential, the phrase clearly and unambiguously does not mean that the employee must exercise independent judgment in carrying out the enumerated functions.[12]

---

expressed in a dictionary." (Internal quotation marks omitted.) *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 235, 983 A.2d 1 (2009).

[10] The board contends in its brief that, "for the phrase 'principal function' to have any meaning, it must include . . . elements of expertise and judgment and reliance by the [department] on both." In its decision, however, it concluded that, under § 5-270 (g) (2), managerial employees must "exercise . . . *independent* judgment . . . ." (Emphasis added.) Although we agree with the board that the functions described in § 5-270 (g) (2) and (3) may require some level of expertise and judgment and that employers will rely on managerial employees to carry out their functions, we do not agree with its conclusion that the phrase principal function connotes the exercise of independent judgment, which was the basis for its decision.

[11] We do not suggest that these are the only factors that may be considered.

[12] We emphasize that we do not, as the dissent suggests, conclude that the functions of managers as set forth in § 5-270 (g) (2) are "ministerial." We conclude only that managerial employees need not exercise *independent judgment* in carrying out those functions. The board found that the employees "may be asked for their opinions . . . in select cases, [and] individual majors and other superiors may rely heavily on them," but, nevertheless, concluded that they were not managerial employees because "they simply do not have and cannot exercise the level of independent judgment and involvement necessary to meet this criterion." Thus, the board concluded

Similarly, nothing within the language specifically describing the principal functions of managerial employees connotes that such employees must exercise independent judgment in carrying out those functions. Subdivision (2) provides that the position's most important, consequential or influential functions may include the "development, implementation and evaluation of goals and objectives consistent with agency mission and policy . . . ." General Statutes § 5-270 (g) (2). The development, implementation and evaluation of the goals and objectives may be an important responsibility of an employee in a particular position even if the employee does not exercise independent judgment in carrying out that responsibility. For example, one of the principal functions of an employee may be to present a range of options for implementing the employer's goals and objectives, with the final choice to be made by a higher ranking employee. Subdivision (3) of § 5-270 (g) merely provides that a principal function of a managerial employee may be "participation in the formulation of agency policy . . . ."[13] Participation, by its very nature, does not require independence.[14]

that, although the employees gave opinions, which requires the exercise of judgment, they were not managerial employees because they did not exercise *independent* judgment. We conclude only that the latter determination by the board was improper. Contrary to the dissent's suggestion, our conclusion that § 5-270 (g) (2) does not require that managerial employees exercise *independent* judgment in carrying out the enumerated functions does not necessarily mean that those functions are purely ministerial.

[13] The department points out that the state police, as a paramilitary organization, has a strict chain of command requiring more pronounced accountability than other areas of state service. In recognition of this fact, we conclude that the board, on remand, may consider the nature of the organization in determining the degree of autonomy that the employees must enjoy in order to satisfy the criteria set forth in § 5-270 (g) (2).

[14] In its memorandum of decision, the trial court suggested that the board properly held that both subdivisions (2) and (3) of § 5-270 (g) require that managerial employees exercise independent judgment in carrying out the described activities. In the board's decision, however, the board stated that the department had not established that the employees met the criterion in subdivision (3) of § 5-270 (g) because "no evidence or testimony established that these employees are involved in any way, other than the occasional

Moreover, if the legislature had intended to impose a requirement that managerial employees exercise independent judgment in carrying out the activities described in § 5-270 (g) (2) and (3), it could have done so expressly, as it did in § 5-270 (f).[15] "We are not permitted to supply statutory language that the legislature may have chosen to omit." (Internal quotation marks

suggestion, in the formulation of agency policy." Thus, the board did not interpret subdivision (3) of § 5-270 (g) to require the exercise of independent judgment.

Because we must remand the case to the board for reconsideration of its determination that the employees do not meet the criterion contained in § 5-270 (g) (2) in light of our determination that that criterion does not require the exercise of independent judgment, we need not decide whether the board's determination that the employees did not meet the criterion set forth in subdivision (3) was proper under the definition of principal functions that we have adopted in this opinion. Rather, we leave that determination to the board on remand.

[15] General Statutes § 5-270 (f) provides in relevant part: " 'Supervisory employee' means any individual in a position in which the principal functions are characterized by not fewer than two of the following: (1) Performing such management control duties as scheduling, assigning, overseeing and reviewing the work of subordinate employees; (2) performing such duties as are distinct and dissimilar from those performed by the employees supervised; (3) exercising judgment in adjusting grievances, applying other established personnel policies and procedures and in enforcing the provisions of a collective bargaining agreement; and (4) establishing or participating in the establishment of performance standards for subordinate employees and taking corrective measures to implement those standards, provided in connection with any of the foregoing the exercise of such authority is not merely of a routine or clerical nature, *but requires the use of independent judgment* . . . ." (Emphasis added.) The board argues that it would be absurd to conclude that supervisory employees, who are of lower rank than managerial employees and who are not excluded from collective bargaining, are required to exercise independent judgment in carrying out their principal functions, but managerial employees are not. The principal functions of supervisory employees are different, however, from those of managerial employees. Accordingly, we do not agree that our interpretation results in an absurdity. The legislature reasonably could distinguish supervisory employees from lower ranking employees by requiring a finding that the former exercise independent judgment in carrying out certain functions while distinguishing managerial employees from lower ranking employees by requiring a finding that the former had different principal functions than the latter.

omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 266 Conn. 108, 119, 830 A.2d 1121 (2003).

The board and the union raise numerous policy arguments in support of their claim that managerial employees must exercise independent judgment in carrying out the principal functions described in § 5-270 (g) (2) and (3), and also point to the legislative history of the statute. We have concluded, however, that the language of § 5-270 (g) plainly and unambiguously does not require that managerial employees exercise independent judgment in carrying out their principal functions.

We conclude, therefore, that the trial court improperly dismissed the department's appeal after concluding that the board properly had determined that the employees did not meet the criteria for managerial employees set forth in § 5-270 (g) (2) and (3) because the department had not proved that the employees exercised independent judgment in carrying out the functions described in those subdivisions. Accordingly, we reverse the judgment of the trial court and remand the case to that court with direction to remand the case to the board so that it may apply the proper standard.[16]

The judgment of the trial court is reversed and the case is remanded to that court with direction to sustain the department's appeal and to remand the case to the board for further proceedings according to law.

In this opinion NORCOTT, ZARELLA and McLACHLAN, Js., concurred.

KATZ, J., with whom PALMER, J., joins, dissenting. I disagree with the majority's determination that the

---

[16] General Statutes § 4-183 (j) provides in relevant part that, if the trial court sustains an administrative appeal, it may, "if appropriate . . . remand the case for further proceedings. . . ."

trial court improperly affirmed the decision of the named defendant, the state board of labor relations (board), granting the petition of the defendant Connecticut State Employees Association, SEIU Local 2001 (union), for certification as the exclusive bargaining representative for the state police lieutenants and captains (employees) employed by the named plaintiff, the department of public safety (department).[1] Specifically, I disagree that the trial court improperly concluded that the board properly had determined that these employees were not " '[m]anagerial employee[s]' " within the meaning of General Statutes § 5-270 (g).[2] Rather, I would conclude that the trial court properly affirmed the board's decision because: (1) the board properly construed § 5-270 (g) (2) to require the exercise of independent judgment and properly found that these employees did not exercise such judgment; and (2) the board's conclusion that there was no evidence to demonstrate that the employees participated in policy development as required under § 5-270 (g) (3) was supported by the record. Accordingly, I respectfully dissent.

As a preliminary matter, it is useful to clarify briefly the basis of both the board's decision and the trial court's affirmance of that decision, as well as what is not at issue. It is undisputed that the employees' job

---

[1] As the majority notes in footnote 1 of its opinion, the office of policy and management also was a plaintiff in this case.

[2] General Statutes § 5-270 (g) provides: " 'Managerial employee' means any individual in a position in which the principal functions are characterized by not fewer than two of the following, provided for any position in any unit of the system of higher education, one of such two functions shall be as specified in subdivision (4) of this subsection: (1) Responsibility for direction of a subunit or facility of a major division of an agency or assignment to an agency head's staff; (2) development, implementation and evaluation of goals and objectives consistent with agency mission and policy; (3) participation in the formulation of agency policy; or (4) a major role in the administration of collective bargaining agreements or major personnel decisions, or both, including staffing, hiring, firing, evaluation, promotion and training of employees."

functions meet the criteria of § 5-270 (g) (1), but do not meet the criteria of § 5-270 (g) (4). Therefore, this appeal turns on whether the board properly determined that the classifications of state police lieutenant and captain did not meet either of the two criteria of § 5-270 (g) (2) and (3), as employees must meet at least two of the four criteria under § 5-270g to be deemed managerial employees. In regard to the criterion set forth in § 5-270 (g) (2)—"development, implementation and evaluation of goals and objectives consistent with agency mission and policy"—the board determined that to satisfy that subdivision, the exercise of independent judgment is required. The board then found that: "The evidence clearly supports a conclusion that the responsibility for the development, implementation and evaluation of goals and objectives consistent with the [department's] mission is placed at a level above that of captain. While these employees may be asked for their opinions and in select cases, individual majors and other superiors may rely heavily on them, [those employees] simply do not have and cannot exercise the level of independent judgment and involvement necessary to meet this criterion." In regard to the criterion set forth in § 5-270 (g) (3)—"participation in the formulation of agency policy"—the board concluded that the employees "[did] not participate in any meaningful way in the formulation of agency policy. . . . [N]o evidence or testimony established that these employees are involved in any way, other than the occasional suggestion, in the formulation of agency policy. As such, none of the employees fit [the] criterion [of § 5-270 (g) (3)]."

In affirming the board's decision, however, the trial court treated that decision as though it properly had injected the independent judgment requirement into its analysis of both subdivisions (2) and (3) of § 5-270 (g). In doing so, the court noted that "[t]he concept of independent judgment does not require the manager to have

absolute autonomy, but as the [board] state[d] in its brief . . . [t]he [department must] show that the employees were vested with some indication of trust in their judgment and authority and that they were included in a meaningful way in decision-making and policy formulation . . . . To some extent all [s]tate employees implement goals and objectives and make suggestions about policy. However, the statute means nothing if it does not mean that managers have some indicia that they participate effectively in the processes by which decisions regarding the agency are made." (Internal quotation marks omitted.) Looking to previous board decisions interpreting § 5-270 (g) to impose such a requirement, the court afforded deference to the board's interpretation and determined that the board's construction was reasonable. I would conclude that the trial court properly interpreted and affirmed the board's determination as it pertained to subdivision (2) of § 5-270 (g). I would further conclude that, although the trial court misinterpreted the basis of the board's decision, it nevertheless properly affirmed the board's ultimate determination as to subdivision (3) of the statute.

I

I first turn to § 5-270 (g), which provides in relevant part that the term " '[m]anagerial employee' means any individual in a position in which the principal functions are characterized by . . . (2) development, implementation and evaluation of goals and objectives consistent with agency mission and policy . . . ." The question of whether the trial court properly concluded that the board correctly had determined that the employees did not satisfy § 5-270 (g) (2) because that subdivision requires the exercise of independent judgment presents a question of statutory interpretation. I agree with the majority that the trial court improperly deferred to the board's interpretation of § 5-270 (g) (2) because that interpretation was neither time-tested nor previously

subjected to judicial review and, therefore, that plenary review is appropriate. See *Vincent* v. *New Haven*, 285 Conn. 778, 783–84, 941 A.2d 932 (2008); *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 163–64, 931 A.2d 890 (2007). I disagree, however, with the majority's conclusion that the enumerated terms unambiguously do not require the exercise of independent judgment.

In undertaking this review, I am mindful of the plain meaning rule of General Statutes § 1-2z[3] and our general rules of statutory construction. See *Picco* v. *Voluntown*, 295 Conn. 141, 147, 989 A.2d 593 (2010). "[T]he test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Orr*, 291 Conn. 642, 654, 969 A.2d 750 (2009). As the majority states, the text of § 5-270 (g) (2) makes no *express* reference to the level of judgment, discretion or authority an employee must use in his duties in order to satisfy that criterion.[4] From this, the majority concludes that § 5-270 (g) (2) plainly and unambiguously does not require such judgment, whereas the board, which is charged with implementing that statute, has concluded that it plainly and unambiguously means the opposite. Although I do not dispute the reasonableness of the majority's interpretation, I am more convinced that the language of the statute, read

[3] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[4] The majority also concludes that the term "principal functions," as it is used in the introductory phrase of § 5-270 (g), does not give rise to a requirement that an employee act with independent judgment in order to qualify as a manager. I agree, and accordingly, I confine my analysis to whether the language of § 5-270 (g) (2), itself, requires such judgment.

contextually, supports the reasonableness of the *board's* interpretation. In my view, therefore, because it fails to yield a plain and unambiguous meaning, § 5-270 (g) (2) is ambiguous. See, e.g., *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 12, 961 A.2d 373 (2009) ("[b]ecause both readings of the statute are reasonable, we conclude that the statutory language is ambiguous in this case"); *State* v. *Jenkins*, 288 Conn. 610, 620–21, 954 A.2d 806 (2008) (concluding that phrase is ambiguous because it is susceptible of more than one reasonable interpretation).

Section 5-270 (g) (2) addresses three functions that must be performed consistently with the mission and policy of the particular state agency—(1) the development, (2) implementation and (3) evaluation of goals and objectives. The commonly accepted definitions of these terms, to which we may look as part of our analysis under § 1-2z; see General Statutes § 1-1 (a);[5] read together, seem to connote the use of independent judgment. I would agree that the common meaning of implementation, *read in isolation,* suggests a purely ministerial function and thus does not require the exercise of independent judgment.[6] See The American Heri-

---

[5] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

[6] It is well established that duties that require independent judgment are nonministerial. See *Gerte* v. *Logistec Connecticut, Inc.*, 283 Conn. 60, 65, 924 A.2d 855 (2007) ("[t]he proceedings on remand, therefore, are not merely ministerial but, rather, will require the exercise of independent judgment or discretion and the taking of additional evidence"); *Smith* v. *Yurkovsky*, 265 Conn. 816, 820, 830 A.2d 743 (2003) ("[t]he test that determines whether [an administrative] decision is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision is an appealable final judgment, *but if further proceedings will require the exercise of independent judgment* or discretion . . . the appeal is premature and must be dismissed" [emphasis added; internal quotation marks omitted]); *Dechio* v. *Raymark Industries, Inc.*, 114 Conn. App. 58, 71–72, 968 A.2d 450 ("[our Supreme Court] long has held that such a determi-

tage Dictionary of the English Language (3d Ed. 1992) (defining "implement" as "[t]o put into practical effect; carry out"). On the other hand, the common meaning of evaluation does connote the use of independent judgment. See id. (defining "evaluate" as "[t]o examine and judge carefully; appraise"). The meaning of development is fairly open-ended. See id. (defining "develop" as "[t]o bring from latency to or toward fulfillment . . . [t]o expand or enlarge . . . [t]o improve the quality of; refine . . . [t]o bring into being gradually").

It is significant, however, that § 5-270 (g) (2) requires the evaluation and development of goals and objectives *in conformity with "agency mission and policy . . . ."* (Emphasis added.) Those policies and missions rarely consist of wholly objective criteria or ministerial procedures that would obviate the need for the exercise of independent judgment, but, rather, are commonly understood to involve broadly stated ideals. See Black's Law Dictionary (9th Ed. 2009) (defining "policy" as "[t]he *general principles* by which a government is guided in its management of public affairs" [emphasis added]); The American Heritage Dictionary of the English Language, supra (defining "mission" as "[a] special assignment given to a person or group"); The American Heritage Dictionary of the English Language, supra ("[P]olicy" is defined as: "[a] plan or course of action, as of a government . . . intended to influence and determine decisions, actions, and other matters: American foreign policy; the company's personnel policy. . . . A course of action, guiding principle, or procedure considered expedient, prudent or advantageous . . . ."). Acting in conformity with a policy or mission therefore necessitates independent judgment of the

nation . . . will require the [workers' compensation] commissioner's exercise of independent judgment and certainly will not be ministerial in nature" [internal quotation marks omitted]), cert. granted, 293 Conn. 902, 975 A.2d 1277 (2009).

meaning, import and consequences of such ideals. Analogously, the legislature routinely assigns agencies the task of developing regulations that are consistent with broadly stated legislative policies, a task that clearly requires the exercise of independent judgment. See, e.g., General Statutes § 1-84 (r) (2) (requiring board of trustees of constituent units of state system of higher education to establish *policies* to ensure that members do not violate ethical code and to establish specific *procedures* to effectuate those policies); General Statutes § 42-260 (g) ("[t]he Insurance Commissioner shall develop regulations, in accordance with chapter 54, implementing an arbitration process to settle disputes arising from extended warranty contracts between extended warranty providers and buyers"); General Statutes § 46a-57 (c) ("[t]he commission [on human rights and opportunities], in consultation with the executive director and Chief Human Rights Referee, shall adopt regulations and rules of practice, in accordance with chapter 54, to ensure consistent procedures governing contested case proceedings"). Therefore, read contextually, the language of § 5-270 (g) (2) supports the reasonableness of the board's contention that the statute requires managers to exercise independent judgment.

I find unavailing the majority's contention that the legislature's inclusion of the term "independent judgment" in § 5-270 (f)[7] conclusively indicates that it did

---

[7] General Statutes § 5-270 (f) provides: " 'Supervisory employee' means any individual in a position in which the principal functions are characterized by not fewer than two of the following: (1) Performing such management control duties as scheduling, assigning, overseeing and reviewing the work of subordinate employees; (2) performing such duties as are distinct and dissimilar from those performed by the employees supervised; (3) exercising judgment in adjusting grievances, applying other established personnel policies and procedures and in enforcing the provisions of a collective bargaining agreement; and (4) establishing or participating in the establishment of performance standards for subordinate employees and taking corrective measures to implement those standards, provided in connection with any of the foregoing the exercise of such authority is not merely of a routine

not intend for such a consideration to apply in § 5-270 (g) (2). It is evident from the plain language of these subsections that the tasks enumerated in subsection (f) of the statute refer primarily to *personnel* functions and therefore differ markedly from the policy and mission focused responsibilities enumerated in § 5-270 (g) (2). Indeed, the sole reference to policy in subsection (f) requires only that a supervisory employee exercise judgment in "applying . . . established personnel policies and procedures . . . ." General Statutes § 5-270 (f) (3). It is particularly telling that this subdivision refers to "applying" policy rather than to the "development, implementation and evaluation" of goals and objectives consistent with policy as referenced in § 5-270 (g) (2) because the term application does not necessarily connote a use of discretion or judgment. See Black's Law Dictionary, supra (defining "apply" as "[t]o employ for a limited purpose . . . [t]o put to use with a particular subject matter"); The American Heritage Dictionary of the English Language, supra (defining "apply" as "[t]o put to or adapt for a special use . . . [t]o put into action"). The inclusion of an explicit independent judgment requirement in § 5-270 (f) therefore serves to distinguish between the largely ministerial tasks enumerated therein and the level of discretion and judgment necessary to qualify as a supervisor. In contrast, such an explicit requirement would not be necessary in § 5-270 (g) (2) if, as the board reasonably concluded, the plain terms of that subdivision already connote the use of such judgment.[8]

---

or clerical nature, but requires the use of independent judgment, and such individuals shall be employees within the meaning of subsection (b) of this section. The above criteria for supervisory positions shall not necessarily apply to police or fire departments."

[8] Indeed, if, as the board reasonably concluded, the plain meaning of § 5-270 (g) (2) required independent judgment, the explicit inclusion of such a term would have been redundant. We presume that the legislature does not include superfluous terms. See *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 588–89, 775 A.2d 284 (2001) ("It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provi-

Moreover, reading § 5-270 (f) in conjunction with § 5-270 (b),[9] which enumerates the classes of state workers considered eligible employees for the purpose of collective bargaining, suggests that the inclusion of the explicit independent judgment requirement in § 5-270 (f) lends support to the *board's* interpretation of § 5-270 (g) (2). The effect of § 5-270 (b) and (f) is explicitly to include supervisors in collective bargaining. See *State Management Assn. of Connecticut, Inc.* v. *O'Neill,* 204 Conn. 746, 749, 755, 529 A.2d 1276 (1987) (noting that under § 5-270 [b] and [f] supervisory employees are eligible for collective bargaining). Indeed, the term "supervisory employee" appears nowhere else in the relevant statutory scheme, and therefore § 5-270 (f) appears to have little effect beyond ensuring that supervisory employees are included in collective bargaining.[10] In contrast, § 5-270 (b) explicitly excludes managers from collective bargaining. As the board noted, it would be a bizarre result to require supervisors to exercise independent judgment but not to require managers, who constitute the top of the leadership structure and are therefore excluded from collective bargaining, to exercise that same level of judgment. I therefore disagree with the majority that the inclusion of the explicit "independent judgment" requirement in § 5-270 (f) unambig-

sions. . . . Accordingly, care must be taken to effectuate all provisions of the statute." [Citation omitted; internal quotation marks omitted.]).

[9] General Statutes § 5-270 (b) provides: " 'Employee' means any employee of an employer, whether or not in the classified service of the employer, except elected or appointed officials other than special deputy sheriffs, board and commission members, disability policy specialists assigned to the Council on Developmental Disabilities, managerial employees and confidential employees."

[10] The legislative history of § 5-270 (f) reveals that a proposed but unadopted amendment to the original act would have required that supervisory and nonsupervisory employees be in different collective bargaining units. See 18 H.R. Proc., Pt. 14, 1975 Sess., p. 6598, remarks of Representative Russell Lee Post, Jr. ("[t]he file copy [of the amendment] says that if we have [c]ollective [b]argaining for [s]upervisors, that we should make sure that [s]upervisors are of different units than the people they supervise").

uously indicates that such a requirement does not exist in § 5-270 (g). Accordingly, I also conclude that the language of § 5-270 (g) (2) is open to more than one reasonable interpretation and thus is not plain and unambiguous.[11]

The available extratextual sources, to which I turn because the language of the statute is ambiguous; *Grady* v. *Somers*, 294 Conn. 324, 334, 984 A.2d 684 (2009); bolsters the department's reading of § 5-270 (g) (2) as requiring managers to exercise independent judgment. This court previously has analyzed the meaning and the import of the legislative history of § 5-270 (g). "A review of the legislative history of No. 81-457 of the 1981 Public Acts, the origin of . . . § 5-270 (g) which excludes managerial employees, reveals that, in enacting the statute, the legislators were . . . concerned with efficiency in state government: 'The purpose of [§ 5-270 (g)] is to ensure that there are people available to act as managers for the state system to provide effective management of state government.' 24 H.R. Proc., Pt. 24, 1981 Sess., p. 7874, remarks of Representative Gardner Wright. 'It is important that we allow the state to deal with some system for being able to pick the people who will be classified as managers so that everyone knows what the responsibility is, what the assignments are and who has to take responsibility for action whether something is done correctly and can take credit or whether something is done badly and have to take the blame.' 24 S. Proc., Pt. 17, 1981 Sess.,

---

[11] I note that the majority appears to treat the term "independent judgment" in a more restrictive manner than did the board. I do not understand the board's interpretation to mean that the employee must operate *completely* autonomously. Thus, the mere fact that employees may work collectively to develop goals and objectives would not render their action outside the scope of § 5-270 (g) (2). Indeed, in § 5-270 (f), which expressly requires the exercise of independent judgment, the legislature also has used the term "participat[e]," which necessarily requires some collective action. See footnote 7 of this dissenting opinion.

p. 5624, remarks of Senator Marcella Fahey. Related to this legislative purpose was the concern for the security and safety of those people under the care of various state agencies in strike situations. Senator Fahey indicated: 'What we are dealing with here today is if we have problems in the [s]tate of Connecticut and we have a strike, who is going to be there to take care of our patients in our hospitals? Who is going to be there to take care of our prisoners? We are not saying we want to leave enough people so that they can break the strike, but there has to be at least two or three people who are designated as managers, who can make sure that the place doesn't catch on fire or can make plans for a disaster to move patients in and out of places, who can make sure they ring a fire alarm or push the right button or at least call if there is a problem. If we do not exclude anyone and call anyone a manager, how do we operate? We all look to someone who is a manager for the administrative functions. . . . If we pull things together so that everybody is equalized in a situation that no one can take the initiative and answer a question, are we helping the public or are we hurting the public?' [Id.], pp. 5623–24." *State Management Assn. of Connecticut, Inc.* v. *O'Neill,* supra, 204 Conn. 755.

Drawing from this legislative history, as well as the text of the statute, this court has emphasized that, in order to effectuate the legislature's policy considerations, the managerial exclusion applies only to employees with significant independent and decision-making authority. "[M]anagers have the responsibility to decide major personnel decisions and formulate agency policies . . . . These responsibilities give managers prestige, *autonomy* and managerial *authority* that is not enjoyed by other employees." (Emphasis added.) *Dept. of Administrative Services* v. *Employees' Review Board,* 226 Conn. 670, 683–84, 628 A.2d 957 (1993); see also *State Management Assn. of Connecticut, Inc.* v.

*O'Neill,* supra, 204 Conn. 759 ("In comparing managers and supervisors, the trial court reasoned that '[s]upervisors supervise the work of subordinates; managers head an agency [unit] or facility. Supervisors apply agency policies; managers formulate those policies. Supervisors enforce collective bargaining agreements; managers play a major role in administering them. Supervisors establish and implement employee performance standards; managers decide major personnel decisions. In short, supervisors are equivalent to foremen and lower management; managers to middle and upper management.' . . . On the basis of our review of . . . § 5-270 [f] and [g], we agree with the trial court's conclusion . . . .").

In addition, as we previously have noted, the board has interpreted § 5-270 (g) to require the exercise of independent judgment. In *In re Protective Services Employees Coalition, AFL-CIO,* Conn. Board of Labor Relations Decision No. 3145 (October 27, 1993), the board approved a petition to include certain state police lieutenants associated with the department of mental health and the alcohol and drug abuse commission in a collective bargaining unit in part because the lieutenants did not exercise independent judgment in developing, implementing and evaluating goals and objectives consistent with the agency's mission and policy. Id., 8. In reaching this decision, the board noted that "[t]he degree to which the development of a [l]ieutenant's goals and objectives is thus constrained by guidance from the [c]entral [o]ffice and from the facility's top management is problematic. . . . They may not be told what to write, but . . . [top management does] say, submit these, these are acceptable or they're not acceptable, get them more in line with what they are supposed to be, what you have been instructed to achieve."[12] (Internal quotation marks omitted.) Id.

---

[12] The board subsequently reached a similar conclusion with regard to certain employees of the department of correction in *In re Connecticut*

Since this court's decisions in *Dept. of Administrative Services* v. *Employees' Review Board,* supra, 226 Conn. 670, and *State Management Assn. of Connecticut, Inc.* v. *O'Neill,* supra, 204 Conn. 746, and the board's 1993 and 2005 decisions interpreting § 5-270 (g), the legislature has amended that section several times, but did nothing to clarify or change the definition of a manager in the statute. See Public Acts 1997, No. 97-148, § 1; Public Acts 2001, No. 01-103, § 1; Public Acts 2005; No. 05-256, § 5. "Although we are aware that legislative inaction is not necessarily legislative affirmation . . . we also presume that the legislature is aware of [this court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation. . . . Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute. . . . Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision." (Internal quotation marks omitted.) *Mahon* v. *B.V. Unitron Mfg., Inc.,* 284 Conn. 645, 665–66, 935 A.2d 1004 (2007); see also *Connecticut Light & Power Co.* v. *Public Utilities Control Authority,* 176 Conn. 191, 199, 405 A.2d 638 (1978) (noting that legislative silence following board decision interpreting statute constitutes " 'presumptive evidence' of the correctness of the administrative inter-

---

*State Employees Assn., SEIU Local 2001,* Conn. Board of Labor Relations Decision No. 4070 (August 17, 2005), based in part on its determination that the leadership structure at issue in that case "removes the development of goals consistent with agency mission and policy . . . from the responsibilities of the employees at issue and places it at the highest levels of the agency. Thus, while employees may be asked for their recommendations, none exercise the level of independent judgment or authority necessary to fulfill [the statutory criteria of § 5-270 (g) (2)]." Id., 4.

pretation"). The legislative acquiescence doctrine is especially persuasive when, as in the present case, the "legislature affirmatively amended the statute subsequent to a judicial or administrative interpretation, but chose not to amend the specific provision of the statute at issue." *Berkley* v. *Gavin*, 253 Conn. 761, 780, 756 A.2d 248 (2000).[13]

In light of this legislative history, as well as the strong suggestion within the text of § 5-270 (g) (2) that the enumerated duties require discretion and autonomy, I would conclude that the trial court properly determined that the board correctly had concluded that, to fulfill § 5-270 (g) (2), the development, implementation and evaluation of goals and objectives consistent with an agency's mission and policy requires the exercise of

---

[13] The majority challenges this application of the legislative acquiescence doctrine based, in part, on its conclusion that the board's interpretation of § 5-270 (g) (2) is not time-tested. I first note that this analysis seems to conflate the doctrine concerning judicial deference to an agency's decision with that governing legislative acquiescence to a court or agency decision. While these doctrines may sometimes overlap in application, they are nonetheless triggered by separate and distinct circumstances and I cannot agree that the inapplicability of one should influence the applicability of the other.

It is true that legislative inaction following an agency decision may not constitute legislative acquiescence when the agency decision "is of relatively recent vintage and of relatively infrequent application"; *Vincent* v. *New Haven*, 285 Conn. 778, 791 n.15, 941 A.2d 932 (2008); because, in such a situation, it may be "too soon to draw any firm conclusion from legislative inaction . . . ." Id. Considering, however, that the legislature has had twenty-three years to respond to this court's decision in *O'Neill*, and seventeen years to respond to the board's decision in *In re Protective Services Employees Coalition, AFL-CIO*, and that the legislature has, in fact, amended § 5-270 (g) three times in that interval, I conclude that the facts in this case weigh heavily in favor of applying the doctrine of legislative acquiescence. See *Wiseman* v. *Armstrong*, 269 Conn. 802, 825–26, 850 A.2d 114 (2004) (fact that legislature amended statute three times after attorney general's opinion but did not change relevant provision indicative of legislative acquiescence); *Connecticut Light & Power Co.* v. *Public Utilities Control Authority*, supra, 176 Conn. 198 ("inference of legislative concurrence with the agency's interpretation [is] to be drawn from legislative silence concerning that interpretation, especially where the legislature makes unrelated amendments in the same statute").

independent judgment. Because there is no challenge to the board's conclusion that the department's employees in the present case do not exercise such independent judgment, the trial court properly concluded that § 5-270 (g) (2) was not satisfied.

## II

I turn next to the trial court's determination that the board properly concluded that § 5-270 (g) (3), which requires "participation in the formulation of agency policy," was not satisfied in the present case. As I previously have noted, the board concluded that the department had failed to establish that the employees were involved in any way, beyond offering *occasional* suggestions, in the formulation of policy. The trial court, however, treated the board's decision as requiring "independent judgment" for both § 5-270 (g) (2) and (3). Although I agree with the majority that the trial court improperly engrafted that requirement onto the statutory language, I do so not because the court misinterpreted the statute, but, rather, because it misinterpreted the basis of the board's decision.[14] Therefore, I would affirm the judgment of the trial court as to § 5-270 (g) (3) on the alternate ground that the board properly found that the department had presented insufficient evidence to establish that the employees participated in the formulation of agency policy.

While the department focuses specifically on the fact that the board's decision refers to "meaningful" participation, which the department contends was improper, the department ignores the fact that the board specifically found that the department had provided no evidence or testimony demonstrating that the employees were involved in policy formulation *in any way beyond*

---

[14] Although the majority acknowledges that the board's decision did not rest on the independent judgment requirement, it declines to address the propriety of the board's decision.

*offering occasional suggestions.* As the factual finding of an administrative agency, this court may "determine [only] whether there [was] substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts [were] reasonable." (Internal quotation marks omitted.) *Hogan* v. *Dept. of Children & Families,* 290 Conn. 545, 561, 964 A.2d 1213 (2009). The department does not contend that there was evidence to the contrary or that the board's conclusion drawn from the evidence was unreasonable. Accordingly, I conclude that the trial court properly affirmed the decision of the board because the employees did not satisfy the requirements of either § 5-270 (g) (2) or (3).

I therefore respectfully dissent.