## COMMISSIONER OF PUBLIC SAFETY *v.* BOARD OF FIREARMS PERMIT EXAMINERS ET AL.
### (AC 32595)

DiPentima, C. J., and Bishop and Espinosa, Js.

Submitted on briefs April 15—officially released June 14, 2011

*George Jepsen*, attorney general, *Richard Blumenthal*, former attorney general, and *Michael K. Skold* and *Robert W. Clark*, assistant attorneys general, filed a brief for the appellant (plaintiff).

*George Jepsen*, attorney general, and *DeAnn S. Varunes*, assistant attorney general, filed a brief for the appellee (named defendant).

*Opinion*

BISHOP, J. The plaintiff, the commissioner of public safety (commissioner), appeals from the judgment of the trial court dismissing his administrative appeal from the decision of the defendant state board of firearms

permit examiners (board), reversing the commissioner's decision to revoke the state pistol permit of the defendant Griffess McWhorter. On appeal, the plaintiff claims that the court improperly concluded that the board did not abuse its discretion in determining that McWhorter is a suitable person to hold a firearms permit. We affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. McWhorter was issued a pistol permit in 2003. The commissioner revoked the permit on September 24, 2007, as a result of an incident in which McWhorter was found in possession of a weapon while operating a motor vehicle under the influence of alcohol. The relevant background facts are as follows. McWhorter was awakened by his wife in the early morning hours of August 12, 2007, when she informed him that their son was stranded in Hartford with a broken-down car. McWhorter had consumed substantial alcoholic beverages in his backyard during the prior evening. Intent on assisting his son, he quickly dressed, putting on the pants that he had been wearing the prior evening. As he got in his car and was leaving, he realized that he had a firearm in his pocket, which was later identified as a small silver and brown .32 caliber Derringer style handgun. The handgun was loaded with two bullets. At approximately 1:20 a.m., McWhorter was stopped by a Windsor police officer who had noticed that the rear registration plate light on his car was not illuminated. After observing his conduct, the officer requested that McWhorter exit the car to undergo a field sobriety test. He exited the car and informed the officer of the handgun in his pocket, which the officer confiscated. After failing the sobriety test, McWhorter was arrested and charged with possession of a weapon in a motor vehicle without a permit in violation of General Statutes § 29-38 and carrying a firearm while under the influence of intoxicating liquor or drugs in violation

of General Statutes § 53-206d (a). Although he was cooperative at the scene, he was uncooperative and agitated during processing at the police station. A test of his blood alcohol content conducted at the station returned a result of 0.238. As a result of the incident, the commissioner revoked McWhorter's pistol permit. All charges subsequently were nolled upon McWhorter's successful completion of a pretrial alcohol education program.

Following the commissioner's revocation of his pistol permit, McWhorter appealed to the board pursuant to General Statutes § 29-32b (b),[1] and a hearing was held on May 7, 2009, at which McWhorter and the arresting officer testified. In its subsequent memorandum of decision, the board reversed the commissioner's decision to revoke the permit on the basis of its findings that the arrest was a single, isolated incident in McWhorter's otherwise law-abiding life and that he was, therefore, a suitable person to hold a firearms permit. The commissioner appealed from the board's decision to the Superior Court pursuant to § 29-32b (f).[2] In a memorandum of decision filed July 13, 2010, the court dismissed the commissioner's appeal, having found that the board's decision neither violated the statutory scheme nor was arbitrary and capricious. This appeal followed.

[1] General Statutes § 29-32b (b) provides in relevant part: "Any person aggrieved by any refusal to issue or renew a permit or certificate under the provisions of section 29-28 or 29-36f, or by any limitation or revocation of a permit or certificate issued under any of said sections . . . may, within ninety days after receipt of notice of such refusal, limitation or revocation . . . and without prejudice to any other course of action open to such person in law or in equity, appeal to the board. On such appeal the board shall inquire into and determine the facts, de novo, and unless it finds that such a refusal, limitation or revocation . . . would be for just and proper cause, it shall order such permit or certificate to be issued, renewed or restored . . . ."

[2] General Statutes § 29-32b (f) provides: "Any person aggrieved by the decision of the board may appeal therefrom in accordance with the provisions of section 4-183."

As a preliminary matter, we set forth the statutory scheme governing appeals from the revocation of firearms permits. Section 29-32b establishes a board of firearms permit examiners within the department of public safety whose function is to hear such appeals. Subsection (b) of § 29-32b provides in relevant part that, in hearing an appeal, "the board shall inquire into and determine the facts, de novo, and unless it finds that such a . . . revocation . . . would be for just and proper cause, it shall order such permit or certificate to be . . . restored . . . ." To supply the meaning of "just and proper cause" for revocation, our state courts have looked to the grounds for revocation set forth in General Statutes § 29-32 (b), which provides in relevant part that a firearms permit "shall be revoked by [the] commissioner upon conviction of the holder of such permit of a felony or of any misdemeanor specified in subsection (b) of section 29-28[3] or upon the occurrence

[3] General Statutes § 29-28 (b) provides in relevant part: "Upon the application of any person having a bona fide residence or place of business within the jurisdiction of any such authority, such chief of police, warden or selectman may issue a temporary state permit to such person to carry a pistol or revolver within the state, *provided such authority shall find that such applicant intends to make no use of any pistol or revolver which such applicant may be permitted to carry under such permit other than a lawful use and that such person is a suitable person to receive such permit.* No state or temporary state permit to carry a pistol or revolver shall be issued under this subsection if the applicant (1) has failed to successfully complete a course approved by the Commissioner of Public Safety in the safety and use of pistols and revolvers including, but not limited to, a safety or training course in the use of pistols and revolvers available to the public offered by a law enforcement agency, a private or public educational institution or a firearms training school, utilizing instructors certified by the National Rifle Association or the Department of Environmental Protection and a safety or training course in the use of pistols or revolvers conducted by an instructor certified by the state or the National Rifle Association, (2) has been convicted of a felony or of a violation of subsection (c) of section 21a-279, section 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-96, 53a-175, 53a-176, 53a-178 or 53a-181d, (3) has been convicted as delinquent for the commission of a serious juvenile offense, as defined in section 46b-120, (4) has been discharged from custody within the preceding twenty years after having been found not guilty of a crime by reason of mental disease or defect pursuant

of any event which would have disqualified the holder from being issued the state permit or temporary state permit pursuant to subsection (b) of section 29-28. . . .” See, e.g., *Williams* v. *Board of Firearms Permit Examiners*, Superior Court, judicial district of New Haven, Docket No. CV-94-0358071 (June 28, 1995). General Statutes § 29-28 (b), in turn, specifies ten grounds for mandatory disqualification. It also, more generally, provides the issuing authority with discretion to deny a firearms permit if it finds that the applicant intends to make an unlawful use of a permitted firearm or is unsuitable to hold such a permit. See General Statutes § 29-28 (b).

In the present case, because McWhorter was not subject to mandatory disqualification under § 29-28 (b), the board applied the discretionary standard and determined that he is a suitable person to hold a firearms permit.[4] The commissioner claims on appeal that he had just cause to revoke McWhorter’s permit and, therefore, that the board abused its discretion in overruling the commissioner’s decision. Because the commissioner’s claim places at issue the statutory scope of the board’s review, which has not been subject to prior judicial scrutiny, we begin by interpreting the statutory scheme as it pertains to this issue.[5]

to section 53a-13, (5) has been confined in a hospital for persons with psychiatric disabilities, as defined in section 17a-495, within the preceding twelve months by order of a probate court, (6) is subject to a restraining or protective order issued by a court in a case involving the use, attempted use or threatened use of physical force against another person, (7) is subject to a firearms seizure order issued pursuant to subsection (d) of section 29-38c after notice and hearing, (8) is prohibited from shipping, transporting, possessing or receiving a firearm pursuant to 18 USC 922 (g) (4), (9) is an alien illegally or unlawfully in the United States, or (10) is less than twenty-one years of age. . . .” (Emphasis added.)

[4] The commissioner also claimed before the trial court that the board improperly failed to determine, pursuant to § 29-28 (b), whether McWhorter intended to make an unlawful use of a permitted firearm. He has not raised this claim, however, in the present appeal.

[5] We note that the commissioner raised this issue before the trial court by asserting in his petition that the board’s findings were in excess of its

Our standard of review of an agency's construction of a statute is well settled. Where, as in the present case, the statutory language has not been subject to judicial review and the agency's interpretation is not time-tested, our review is plenary. *Vincent* v. *New Haven*, 285 Conn. 778, 783–84, 941 A.2d 932 (2008). We turn, therefore, to our normal task of statutory interpretation uninfluenced by prior administrative gloss. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z[6] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Dept. of Public*

statutory authority. The trial court's memorandum of decision does not explicitly address the scope of the board's review, but it appears to have assumed that the board has broad discretion.

[6] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

*Safety* v. *Board of Labor Relations*, 296 Conn. 594, 599–600, 996 A.2d 729 (2010).

Section 29-32b (b) provides in relevant part that, when hearing an appeal from the denial, revocation or limitation of a firearms permit, "the board shall inquire into and determine the facts, de novo, and unless it finds that such a refusal, limitation or revocation . . . would be for just and proper cause, it shall order such permit or certificate to be issued, renewed or restored . . . ." The commissioner's essential contention is that the placement of the words "de novo" after "facts" and before "just and proper cause" indicates that the board may find facts de novo but must limit its consideration of just cause to assessing the propriety of the commissioner's action. The statute, however, does not direct the board to determine whether the commissioner's action "was" for just and proper cause but, rather, to find whether the action "would be" for just and proper cause. In other words, the statute plainly provides for a present determination and not merely a historical review of the commissioner's action.

Not only does the plain meaning of the text support this interpretation, but this outcome is in harmony with the statutory scheme governing the issuance and regulation of firearms permits. It is apparent that the commissioner has the statutory authority unilaterally to deny or revoke a permit without giving the aggrieved party the benefit of a hearing. See General Statutes §§ 29-28 (b) and 29-32 (b). The opportunity for a hearing, subject to procedural safeguards, arises only if the aggrieved party timely appeals to the board, whose sole purpose is to hear such appeals. See General Statutes § 29-32b. It is, therefore, logical that § 29-32b directs the board to find facts de novo, given that a hearing in which aggrieved parties may present evidence and argument was not available to the issuing authority when it denied or revoked a firearms permit. It also follows logically

that the legislature intended for the board to be able to draw its own conclusions as to whether the denial or revocation of a permit "would be for just and proper cause" from this more developed record. We conclude, therefore, that § 29-32b (b) plainly and unambiguously does not limit the board to a deferential review of the judgment of the issuing authority.

Mindful of the board's statutory mandate, we turn to the merits of the commissioner's claim that the board abused its discretion in finding that McWhorter is a suitable person to hold a firearms permit and, therefore, that revocation would not be for just cause. We are not persuaded.

"According to our well established standards, [r]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Board of Labor Relations*, supra, 296 Conn. 598–99.

To determine whether the board abused its discretion in finding that McWhorter is a suitable person to hold a firearms permit, we look to the meaning of the phrase "suitable person." Although not statutorily defined, "[t]he words 'suitable person' have a definite meaning in our law, and their use in the act furnishes a standard

by which the [agency] must be guided." *State* v. *Vachon*, 140 Conn. 478, 485, 101 A.2d 509 (1953). "A person is suitable who, by reason of his character—his reputation in the community, his previous conduct as a licensee—is shown to be suited or adapted to the orderly conduct of a business which the law regards as so dangerous to public welfare that its transaction by any other than a carefully selected person duly licensed is made a criminal offense. It is patent that the adaptability of any person to such a business depends upon facts and circumstances that may be indicated but cannot be fully defined by law, whose probative force will differ in different cases, and must in each case depend largely upon the sound judgment of the selecting tribunal." *Smith's Appeal from County Commissioners*, 65 Conn. 135, 138, 31 A. 529 (1894) (affirming grant of liquor license). Specifically in the context of a firearms permit, "General Statutes §§ 29-28 through 29-38 clearly indicate a legislative intent to protect the safety of the general public from individuals whose conduct has shown them to be lacking the essential character or temperament necessary to be entrusted with a weapon." (Internal quotation marks omitted.) *Dwyer* v. *Farrell*, 193 Conn. 7, 12, 475 A.2d 257 (1984).

The commissioner argues that McWhorter's conduct demonstrates that he lacks the essential judgment to be entrusted with a firearm, particularly in light of the fact that he carried a loaded handgun while under the influence of alcohol. Although the charges against him were nolled, McWhorter's conduct, as charged, has been defined as criminal under § 53-206d. Moreover, McWhorter compounded his dangerous conduct by operating a motor vehicle while armed and intoxicated and by becoming agitated and uncooperative at the police station. We do not disagree with his own characterization, at the hearing before the board, that he felt "ashamed" of his behavior during the episode in question.

Nevertheless, despite the gravity of McWhorter's conduct and the charges that arose as a consequence, his conduct does not fall within any of the express statutory grounds for revocation or denial of a permit. There are ten grounds for mandatory disqualification in § 29-28 (b), none of which pertains here. Although it may or may not be a matter of legislative oversight, we note that even if McWhorter had been convicted of carrying a firearm while under the influence of alcohol under § 53-206d, such a conviction is not enumerated as one of those that invokes mandatory disqualification under § 29-28 (b) (2).

Additionally, we note that our decisional law posits that the determination of suitability to hold a permit depends largely on the sound judgment of the board. See *Smith's Appeal from County Commissioners*, supra, 65 Conn. 138. Thus, for this court, on appeal, to conclude that McWhorter's conduct demonstrated unsuitability per se would be to substitute our judgment for that of the board, which we may not do. See *Dept. of Public Safety* v. *Board of Labor Relations*, supra, 296 Conn. 598.

The board reversed the commissioner's decision to revoke the permit on the basis of its following findings. McWhorter's possession of the handgun that morning was accidental; he did not brandish or use the handgun; he appropriately alerted the arresting officer that he was carrying the handgun; he has led an otherwise law-abiding life; and he was candid, contrite and credible at his hearing. We conclude that the board reasonably inferred that McWhorter's dangerous conduct was a single, isolated incident and, therefore, did not abuse its discretion in determining that McWhorter is a suitable person to hold a firearms permit.

The judgment is affirmed.

In this opinion the other judges concurred.