KAHN, J.
**703 The sole question presented in this appeal is whether an action authorized by the claims commissioner, limited to medical malpractice, may survive a motion to strike where the plaintiff was not a patient of the defendant, as required by Jarmie v. Troncale , 306 Conn. 578, 587, 50 A.3d 802 (2012). The plaintiff, Jill K. Levin, administratrix of the estate of Margaret Rohner (decedent), appeals[1] from the judgment *574 rendered in favor of the defendant, the state of Connecticut, after the trial court granted the defendant's motion to strike. The plaintiff argues that Jarmie does not control in the present case because she is not alleging medical malpractice but, rather, "medical negligence," resulting from the care, treatment, and custody of a patient, and from a failure to warn the decedent of the patient's dangerous propensities. Simultaneously, the plaintiff asserts that there is no meaningful difference between her negligence claim and the medical malpractice claim presented to, and authorized by, the claims commissioner. The defendant counters that the trial court properly struck the plaintiff's claim under Jarmie , because it is a medical malpractice action filed by a nonpatient plaintiff. Alternatively, the defendant contends that, **704 even if the plaintiff's claim is one sounding in negligence, the trial court lacked subject matter jurisdiction because the claims commissioner granted permission to bring an action only for medical malpractice. We agree with the defendant and affirm the trial court's judgment in favor of the defendant rendered following the granting of the defendant's motion to strike.
The following procedural background is relevant to our resolution of this appeal. The plaintiff alleges that Robert O. Rankin fatally attacked and stabbed the decedent, Rankin's mother, while on an approved home visit from River Valley Services (River Valley), a residential mental health-care facility operated by the Department of Mental Health and Addiction Services. The plaintiff thereafter filed a notice of claim with the Office of the Claims Commissioner, seeking permission to bring an action against the defendant for medical malpractice based on mental health services and treatment given to Rankin. The claims commissioner thereafter issued his finding and order, granting permission to the plaintiff to bring an action against the defendant under General Statutes § 4-160 (b).[2] The order specified that "[t]his grant of permission to sue is limited to that portion of the 'claim alleging malpractice against the [defendant], a state hospital or a sanitarium or against a physician, surgeon, dentist, podiatrist, chiropractor, or all other licensed health-care providers employed by the [defendant].' "
**705 The plaintiff subsequently brought this action, alleging that River Valley was negligent in its diagnosis, care, treatment, and custody of Rankin, and that its level of care was below that of a reasonably prudent health-care provider. Specifically, the plaintiff asserted that River Valley failed to secure psychiatric hospitalization for Rankin despite being aware of his emotional deterioration, allowed Rankin to visit the decedent unsupervised despite knowing that he was acting in an increasingly threatening manner toward her, reassured the decedent that it was safe to have Rankin visit despite knowing otherwise, and failed to warn the decedent that Rankin posed a threat to her safety.
*575 The defendant filed a motion to strike the complaint, contending that Connecticut does not recognize medical malpractice claims brought by nonpatient third parties. The trial court granted the motion to strike, observing in its memorandum of decision that "the plaintiff's argument suffers from a dual dilemma." First, the trial court noted that its "subject matter jurisdiction is predicated on the claim's character as a medical malpractice action, which then fails in light of ... Jarmie . Second, even if the complaint could be construed as a common-law negligence action, then the court would be forced to consider and ultimately determine that it is without subject matter jurisdiction [because] there is no basis for finding that the [c]laims [c]ommissioner specifically authorized it as such." Following the trial court's ruling granting the motion to strike, the plaintiff sought to appeal rather than file a new pleading. Thus, pursuant to Practice Book § 10-44, the plaintiff moved for judgment in favor of the defendant on the stricken complaint. Accordingly, the trial court rendered judgment for the defendant. This appeal followed.
The issue presented is whether Jarmie prohibits an action, limited by the claims commissioner to medical **706 malpractice, where the plaintiff was not a patient of the defendant. We begin by setting forth the standard of review, which in the context of "an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary.... We take the facts to be those alleged in the [pleading] that has been stricken and we construe the [pleading] in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) Jarmie v. Troncale , supra, 306 Conn. at 583, 50 A.3d 802.
"We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary.... Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time.... Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it.... [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction .... The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) Ajadi v. Commissioner of Correction , 280 Conn. 514, 532-33, 911 A.2d 712 (2006).
The limitation that the claims commissioner placed on his authorization of the plaintiff's action-restricting that authorization to the plaintiff's medical malpractice claim-created a quandary for the plaintiff. On the one hand, Connecticut does not permit medical malpractice actions to be brought by a nonpatient against a health-care provider. See **707 Jarmie v. Troncale , supra, 306 Conn. at 587, 50 A.3d 802. On the other hand, the plaintiff did not receive authorization to pursue a general negligence claim.
In Jarmie , this court held that "a cause of action alleging medical malpractice must be brought by a patient against a health care provider because the language of the statute specifically provides that the alleged negligence must have occurred in the care or treatment of the claimant." (Emphasis in original; internal quotation marks omitted.) Id. Thus, there is no legally cognizable cause of action in *576 Connecticut for medical malpractice by a nonpatient against a health-care provider.
The present case is exactly the sort of nonpatient medical malpractice action that Jarmie forbids. It is undisputed that the decedent was not the defendant's patient. That the plaintiff's claim sounds in medical malpractice is evident from the way the claim was presented to, and authorized by, **708 the claims commissioner. First, in her notice of claim to the claims commissioner, the plaintiff described the basis of the claim as "medical malpractice." Second, the plaintiff filed the notice of claim pursuant to § 4-160 (b), together with the requisite certificate of good faith. The plaintiff's decision to file under that subsection of the statute is notable because § 4-160 (b) governs claims of "malpractice against the state," and requires the claims commissioner to "authorize suit" if a certificate of good faith is filed. By contrast, if the plaintiff had intended to bring an action against the defendant for negligence, she would have filed a notice of claim pursuant to § 4-160 (a). Section 4-160 (a) gives the claims commissioner discretion to "authorize suit against the state on any claim [that] ... presents an issue of law or fact under which the state, were it a private person, could be liable," assuming that the action is deemed "just and equitable" by the claims commissioner.[3] That is, § 4-106 (a) governs, inter alia, claims sounding in common-law negligence that are brought against the state. Thus, the plaintiff designated the action as one of medical malpractice, by filing a notice of claim and good faith certificate pursuant to the subsection governing medical malpractice actions, § 4-160 (b), rather than the subsection governing negligence actions, § 4-160 (a).
Accordingly, the claims commissioner understood the plaintiff to be bringing a medical malpractice action and authorized it as such. This is evident in the claims commissioner's order permitting the plaintiff to bring an action pursuant to § 4-160 (b), "limited to that portion of the 'claim alleging malpractice against the [defendant], a state hospital or a sanitarium or against a physician, surgeon, dentist, podiatrist, chiropractor, or all other licensed health care providers employed by the state.' "[4] Therefore, the claim presented to, and **709 authorized by, the claims commissioner was solely one of medical malpractice, which is barred by Jarmie . *577 If the plaintiff's action does not sound in medical malpractice but, rather, negligence, as the plaintiff asserts, then the trial court lacked subject matter jurisdiction over the claim.[5] "It is well established that, [w]hen the doctrine of sovereign immunity is applicable, the state must consent to be sued in order for a claimant to pursue any monetary claim against the state.... The claims commissioner may waive that immunity pursuant to ... § 4-160 (a) and consent to suit, but until that occurs, the Superior Court has no jurisdiction to hear any such monetary claim." (Internal quotation marks omitted.) Chief Information Officer v. Computers Plus Center, Inc. , 310 Conn. 60, 91, 74 A.3d 1242 (2013). "Thus, a claimant who seeks to bring an action for monetary damages against the state must first obtain authorization from the claims commissioner.... [T]he Superior Court does not have the authority to waive sovereign immunity on behalf of the state ...." (Internal quotation marks omitted.) Id. at 91-92, 74 A.3d 1242. Furthermore, "[a]ny statutory waiver of immunity must be narrowly construed ... and its scope must be confined strictly to the extent the statute provides." (Internal quotation marks omitted.) Housatonic Railroad Co. v. Commissioner of Revenue Services , 301 Conn. 268, 289, 21 A.3d 759 (2011). In the present case, the waiver granted by the claims commissioner was for a claim of medical malpractice only. Therefore, the Superior Court would have lacked subject matter **710 jurisdiction to consider a negligence claim[6] because it would have been beyond the scope of the action authorized by the claims commissioner under § 4-160 (b).
The plaintiff attempts to resolve this dilemma by arguing that there was no material variance between the claim presented to the claims commissioner and the negligence claim actually brought. We reject this theory. For the reasons previously discussed, the claim presented to, and authorized by, the claims commissioner was one of medical malpractice, which is distinct from the negligence claim the plaintiff now claims she is maintaining.[7]
*578 Accordingly, the trial court properly granted the defendant's motion to strike. Either the plaintiff's claim is one of medical malpractice by a nonpatient, in which case it is barred by Jarmie , or it is a negligence claim that the claims commissioner did not authorize, in **711 which case the trial court would not have subject matter jurisdiction. It fails either way.
The judgment is affirmed.
In this opinion the other justices concurred.

The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

General Statutes § 4-160 (b) provides: "In any claim alleging malpractice against the state, a state hospital or against a physician, surgeon, dentist, podiatrist, chiropractor or other licensed health care provider employed by the state, the attorney or party filing the claim may submit a certificate of good faith to the Office of the Claims Commissioner in accordance with section 52-190a. If such a certificate is submitted, the Claims Commissioner shall authorize suit against the state on such claim."
We note that although § 4-160 has been amended by the legislature since the events underlying the present case; see Public Acts 2016, No. 16-127, § 19; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

Thus, § 4-160 (b) presents a marked departure from the discretion afforded to the claims commissioner under § 4-160 (a). Indeed, "the effect of § 4-160 (b) was to deprive the claims commissioner of his broad discretionary decision-making power to authorize suit against the state in cases where a claimant has brought a medical malpractice claim and filed a certificate of good faith. Instead, § 4-160 (b)requires the claims commissioner to authorize suit in all such cases. In other words, the effect of the statute was to convert a limited waiver of sovereign immunity to medical malpractice claims, subject to the discretion of the claims commissioner, to a more expansive waiver subject only to the claimant's compliance with certain procedural requirements." (Emphasis in original; footnote omitted.) D'Eramo v. Smith , 273 Conn. 610, 622, 872 A.2d 408 (2005). Thus, in the present case, the plaintiff could have sought permission to bring an action pursuant to § 4-160 (a), but the authority to bring the action would have been subject to the discretion of the claims commissioner. By filing pursuant to the requirements of § 4-160 (b), the plaintiff bypassed this discretion, but the result was authorization to bring an action limited to medical malpractice as dictated by that statutory subsection.

Although the claims commissioner's use of qualifying language-the phrase "limited to that portion of the 'claim alleging malpractice' "-might suggest that he thought that the plaintiff's filing included claims other than malpractice, our review of the record does not support that conclusion.

Given our conclusions that (1) this claim is one of medical malpractice, and (2) the trial court would not have subject matter jurisdiction to consider the merits of a negligence claim, we need not address the plaintiff's arguments supporting the substantive merits of such a claim, including her comparison of the present case to Fraser v. United States , 236 Conn. 625, 674 A.2d 811 (1996). Fraser addressed the duty of psychotherapists to control outpatients in the context of negligence jurisprudence. Id. at 629-30, 674 A.2d 811.

The plaintiff asserts that the trial court improperly considered this lack of subject matter jurisdiction in the context of a motion to strike, because that evaluation goes beyond the legal sufficiency of the complaint and is therefore within the purview of a motion to dismiss. This argument is unpersuasive for two reasons. First, "[t]he subject matter jurisdiction requirement ... may be raised by a party, or by the court sua sponte , at any stage of the proceedings, including on appeal." (Emphasis added; internal quotation marks omitted.) Ajadi v. Commissioner of Correction , supra, 280 Conn. at 533, 911 A.2d 712. Indeed, "[a] court lacks discretion to consider the merits of a case over which it is without jurisdiction ...." Id. Second, the trial court granted the motion to strike because of its conclusion that the medical malpractice claim was barred by Jarmie , and specifically did not rule on the issue of subject matter jurisdiction. It merely observed that were the claim to be construed as a medical negligence claim, as the plaintiff asserts, "the court would be forced to consider and ultimately determine that it is without subject matter jurisdiction ...."

The plaintiff's argument that the claims commissioner was cognizant of the negligence claim because he was apprised of the facts and theory on which the plaintiff would proceed is completely undercut by the plaintiff's own submission to the claims commissioner, which characterized this claim as one of medical malpractice.