STRATFORD POLICE DEPARTMENT *v.* BOARD OF
FIREARMS PERMIT EXAMINERS ET AL.
(SC 20580)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to statute (§ 29-28 (b)), certain officials or authorities may issue
a state pistol permit to an applicant if the official or authority determines
that such applicant is "a suitable person to receive such permit," and
"[n]o . . . permit . . . shall be issued" if the applicant "(2) has been
convicted of (A) a felony, or (B) on or after October 1, 1994, a violation
of section 21a-279 or section 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-
96, 53a-175, 53a-176, 53a-178 or 53a-181d [of the General Statutes] . . . ."
The defendant L, who had submitted a state pistol permit application with the
plaintiff, the Stratford Police Department, appealed from the judgment
of the trial court, which reversed the decision of the named defendant,
the Board of Firearms Permit Examiners, to order the issuance of such
permit. The police department initially denied L's application on the
basis of his prior conviction in New York of criminal possession of a
controlled substance, namely, ketamine. The police department con-
cluded that L's conviction for possession of ketamine in New York was
equivalent to a conviction for possession of a controlled substance under
a Connecticut statute (§ 21a-279 (c)), and, because § 29-28 (b) (2) (B)
lists § 21a-279 as a crime that automatically disqualifies an applicant
from receiving a pistol permit if the applicant had been convicted there-
under, L was automatically disqualified from receiving a permit under
§ 29-28 (b). L then appealed to the board from the police department's
denial of the permit. During an administrative hearing before the board,
the police department changed its position and asserted that, although
not a per se bar, L's New York conviction rendered him unsuitable to
receive the permit under § 29-28 (b). During the hearing, the board
questioned L regarding his suitability, focusing on the circumstances
surrounding L's prior arrest and conviction in New York, L's history of
ketamine use, and L's use of other drugs and alcohol. The board also
questioned L regarding the answers he provided in his appellant question-
naire, which he was required to submit to the board prior to the adminis-
trative hearing. The board ultimately decided that L was suitable to
receive a pistol permit and ordered that such a permit be issued. The
police department then filed an administrative appeal with the trial
court, which sustained the police department's appeal. On appeal from
the trial court's judgment in favor of the police department, *held*:
1. The trial court incorrectly concluded that § 29-28 (b) (2) (B) automatically
disqualifies a state pistol permit applicant with an out-of-state conviction

343 Conn. 62 APRIL, 2022 63

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

that is equivalent to a conviction under § 21a-279 from receiving such a permit, as only a felony conviction or a conviction of those misdemeanors specifically enumerated in § 29-28 (b) (2) (B) constitutes a per se bar to obtaining a state pistol permit under § 29-28 (b): the legislature having previously used explicit language in other Connecticut statutes to incorporate equivalent out-of-state convictions, this court concluded that the absence of such language in § 29-28 (b) indicated that the legislature intended that a conviction for one or more of the eleven enumerated Connecticut offenses therein, but not a conviction for an equivalent offense, would operate as a per se bar to obtaining a permit; moreover, there was no merit to the police department's claim that reading § 29-28 (b) as barring permit applicants who have been convicted of one or more of the eleven enumerated offenses, and not their out-of-state equivalents, from receiving a pistol permit would lead to bizarre and unworkable results insofar as it would result in different treatment of individuals who pose the same risk to the public, as the legislature may reasonably have intended to treat in-state and out-of-state convictions differently and to have suitability determinations regarding out-of-state, nonfelony convictions be made on a case-by-case basis; furthermore, contrary to the police department's claim, certain language in the statute (§ 29-32) governing, inter alia, the revocation of existing pistol permits did not require this court to read § 29-28 (b) to incorporate equivalent misdemeanor convictions from extraterritorial courts of competent jurisdiction.

2. The trial court improperly substituted its judgment for that of the board, following the board's determination, after a full hearing, that L was a suitable person to obtain a state pistol permit, as this court could not say that the board acted unreasonably, arbitrarily, illegally, or in abuse of its discretion in making that determination: the record indicated that the board considered and explicitly discussed the potential for the different treatment of out-of-state offenders and of those offenders convicted of similar crimes in Connecticut, the legislature's purpose in enacting § 29-28, and its own statutory interpretation analysis, and, although the trial court, on the same record, may have come to a different conclusion than that of the board, neither this court nor the trial court may substitute its own judgment for that of the board with respect to the weight of the evidence or questions of fact; moreover, there was no merit to the police department's claim that the board had abused its discretion in determining that L was suitable to obtain a permit insofar as his conduct, including the conduct that led to his drug conviction, his confusing response to a question in the board's appellant questionnaire, and his inability to explain to the board his response in the questionnaire or to respond to simple inquiries during the hearing before the board, demonstrated that he should not be entrusted with a weapon, as the degree to which the board credited L's responses to its questions, L's candidness regarding the answers in his appellant questionnaire, and

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

L's overall comportment and demeanor were not for the trial court or this court to second-guess.

Argued December 16, 2021—officially released April 26, 2022

*Procedural History*

Appeal from the decision of the named defendant ordering the issuance of a temporary pistol permit to the defendant Anthony Leo, brought to the Superior Court in the judicial district of Fairfield and transferred to the judicial district of New Britain, Tax and Administrative Appeals Session, where the case was tried to the court, *Cordani, J.*; judgment for the plaintiff, from which the defendant Anthony Leo appealed. *Reversed; judgment directed.*

*C. Christian Young*, for the appellant (defendant Anthony Leo).

*Alfred P. Bruno*, for the appellee (plaintiff).

*Opinion*

McDONALD, J. General Statutes § 29-28 (b) prohibits the issuance of a permit to carry a pistol or revolver if the applicant has been convicted of a felony or certain enumerated offenses under the Connecticut General Statutes but contains no language prohibiting the issuance of a permit on the basis of out-of-state, nonfelony convictions. See General Statutes § 29-28 (b) (2). The applicant in the present case had been convicted in New York of a misdemeanor crime that, had it been committed in Connecticut, would have been among the enumerated offenses precluding him from obtaining a permit. In this appeal, we must decide whether § 29-28 (b) prohibits the issuance of a permit for a pistol or a revolver to an applicant under these circumstances. In light of the fact that the legislature has previously used explicit language in other Connecticut statutes to incorporate equivalent out-of-state convictions, we conclude that the absence of such language in § 29-28 (b) (2)

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

(B) indicates that the legislature intended only for the enumerated Connecticut offenses to operate as a per se bar to obtaining a state pistol permit.

The defendant Anthony Leo,[1] appeals from the judgment of the trial court, which reversed the decision of the named defendant, the Board of Firearms Permit Examiners, ordering the issuance of a pistol permit to the defendant. On appeal, the defendant claims that the trial court erroneously read § 29-28 (b) (2) (B) to include extraterritorial misdemeanor convictions, in contravention of the statute's clear language and enumeration of specific offenses that constitute a per se bar to obtaining a pistol permit in Connecticut. The defendant also claims that the trial court improperly substituted its own judgment for the board's judgment when it overturned the board's determination that the defendant was of suitable character to obtain a pistol permit. We agree with the defendant and, accordingly, reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. In 2016 or 2017, the defendant applied for a state pistol permit. The plaintiff, the Stratford Police Department, denied the defendant's application on the basis of his conviction of criminal possession of a controlled substance, ketamine, ten years prior, in New York.[2] Specifically, the police department concluded that the "New York charge for criminal posses-

___

[1] The named defendant, the Board of Firearms Permit Examiners, did not submit a brief or participate in oral argument before this court. Thus, any references to the defendant are solely to Leo.

[2] The defendant was convicted of misdemeanor possession of a controlled substance in New York, in violation of New York Penal Law § 220.03, which provides in relevant part: "A person is guilty of criminal possession of a controlled substance in the seventh degree when he knowingly and unlawfully possesses a controlled substance. . . ." N.Y. Penal Law § 220.03 (McKinney 2000). At the time of the defendant's New York arrest, ketamine was classified as a schedule III controlled substance in New York. N.Y. Pub. Health Law § 3306 (McKinney 2002).

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

sion of ketamine is equivalent to [the] Connecticut charge of [General Statutes §] 21a-279 (c), possession of [a] controlled substance." Pursuant to § 29-28 (b), "[n]o state or temporary state permit to carry a pistol or revolver shall be issued under this subsection if the applicant . . . (2) has been convicted of (A) a felony, or (B) on or after October 1, 1994, *a violation of section 21a-279* . . . ." (Emphasis added.) Thus, according to the police department, the defendant's conviction for possession of ketamine in New York was an automatic disqualifier for a pistol permit in Connecticut. The defendant timely appealed from this denial to the board pursuant to General Statutes § 29-32b.

In 2018, the board held an administrative hearing, in which it considered the defendant's appeal de novo. Detective Michael Panton, on behalf of the police department, reiterated the department's position that the defendant was automatically disqualified from receiving a pistol permit in Connecticut based on his New York conviction. A member of the board informed Detective Panton that the defendant's New York conviction "is not an automatic disqualifier in Connecticut. . . . [F]or it to be an automatic disqualifier [in Connecticut], it has to be the exact statute number. Even though it may be an equivalent charge in another state, it's not an automatic disqualifier in Connecticut unless it's a felony." Detective Panton represented that he was "not aware of that." The chairman of the board went on to add: "We're restricted to the specific expressed language of the statute, and the language of the statute does not say if you committed one of these misdemeanors or [its] equivalent . . . and specifically identifies Connecticut penal code sections. So, we're restricted to those being automatic disqualifiers."

The police department then changed its position and argued, instead, that, although not a per se bar, the defendant's New York conviction rendered him unsuit-

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

able to receive the permit under § 29-28 (b). As a result, the police department argued, the defendant did not satisfy this separate statutory requirement, and, therefore, the board should still decline to order the issuance of the permit. See General Statutes § 29-28 (b). The only evidence the police department relied on to establish that the defendant was unsuitable for the permit was his prior New York conviction. The board proceeded to question the defendant regarding his suitability. Board members asked questions about the circumstances surrounding the defendant's arrest and subsequent conviction in New York, the defendant's history of ketamine use, and the defendant's use of other drugs and alcohol. The board also questioned the defendant regarding the answers he provided in his appellant questionnaire.[3] The police department had the opportunity to cross-examine the defendant. Ultimately, at the close of the hearing, the board, having rejected the police department's interpretation of § 29-28 (b) (2) (B) and having concluded that the defendant was suitable to receive the permit, reversed the police department's decision and ordered the issuance of a pistol permit to the defendant.

Pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., the police department appealed from the board's decision to the trial court, which, following a hearing, rendered judgment sustaining the police department's appeal. Ultimately, the trial court rejected the board's interpretation

---

[3] As required by statute, the defendant timely submitted a letter to the board requesting an appeal. See General Statutes § 29-32b (b). The defendant also completed an appellant questionnaire and submitted the questionnaire to the board. See State of Connecticut, Office of Governmental Accountability, Board of Firearms Permit Examiners, "How Do I Appeal?," available at https://portal.ct.gov/BFPE/General/General/How-do-I-Appeal (last visited April 18, 2022); see also General Statutes § 29-32b (c) ("[t]he board . . . may request such additional information from the appellant . . . as it deems reasonably necessary to conduct a fair and impartial hearing").

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

of § 29-28 (b), concluding that "§ 29-28 (b) (2) (B) prohibits the issuance of a pistol permit to a person convicted of possession of controlled substances as provided for under § 21a-279 *and equivalents thereof.*" (Emphasis added.) The trial court also held that "the board abused its discretion in finding that [the defendant] was suitable to receive a Connecticut pistol permit . . . ." The court specifically faulted the board for its failure to consider certain "factors," including "the legislative intent, the danger posed by providing pistol permits to persons known to abuse controlled substances, and the inappropriate differentiation between similarly situated applicants." The defendant appealed from the judgment of the trial court to the Appellate Court, and the appeal was thereafter transferred to this court.

On appeal to this court, the defendant argues that the trial court improperly wrote an "equivalency test" into § 29-28 (b) (2) (B), requiring the issuing authority to compare any out-of-state misdemeanor to the automatic disqualifiers enumerated in the statute. The defendant argues that the plain and unambiguous language of § 29-28 (b) (2) (B) and the legislature's failure to include out-of-state equivalency language in the statute, when it has done so in other statutes, demonstrate that the legislature did not intend for out-of-state misdemeanor convictions to constitute a per se bar to the issuance of a pistol permit. Thus, the defendant contends, pursuant to § 29-28 (b) (2) (B), his misdemeanor conviction in New York is not a per se bar to obtaining a pistol permit in Connecticut. The defendant also contends that the trial court improperly substituted its judgment for that of the board in determining that the defendant was unsuitable to obtain his pistol permit under § 29-28 (b).

The police department argues that the trial court properly rejected the board's interpretation of § 29-28 (b) (2) (B) as precluding only those persons convicted

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

of the offenses enumerated in the statute, and not their out-of-state equivalents, from obtaining a pistol permit in Connecticut. The police department argues that, "[w]hen read in context . . . § 29-28 (b) is decidedly not plain and unambiguous . . . but instead requires a fair and reasonable interpretation that avoids absurd and unworkable results." (Internal quotation marks omitted.) The defendant's interpretation, according to the police department, would lead to bizarre and unworkable results, as it would create "two classes of defendants with regard to the issuance of a state permit for the carrying of a pistol or revolver," namely, "those with out-of-state convictions and those with in-state convictions." The police department further argues that the trial court correctly concluded that the board abused its discretion in determining that the defendant was suitable to receive a Connecticut pistol permit, as "[i]t is clear from the hearing transcript that the defendant should not be entrusted with a weapon . . . ." We agree with the defendant and reverse the judgment of the trial court.

I

We begin with the defendant's claim that the trial court erroneously interpreted § 29-28 (b) (2) (B) as prohibiting the issuance of a pistol permit to a person with an out-of-state conviction equivalent to a conviction under § 21a-279. "This court reviews the trial court's judgment pursuant to the [UAPA] . . . . Under the UAPA, it is [not] the function . . . of this court to retry the case or to substitute its judgment for that of the administrative agency." (Internal quotation marks omitted.) *Meriden* v. *Freedom of Information Commission,* 338 Conn. 310, 318, 258 A.3d 1 (2021). Although courts generally afford "deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes"; (internal quotation marks omitted) *Dept. of Public Safety* v.

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

*Freedom of Information Commission*, 298 Conn. 703, 716, 6 A.3d 763 (2010); "[courts] do not defer to [an agency's] construction of a statute—a question of law—when . . . the [provisions] at issue previously [have] not been subjected to judicial scrutiny or when the [agency's] interpretation has not been [time-tested]." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 599, 996 A.2d 729 (2010). When, as here, the statutory language has not been previously subject to judicial review and the agency's interpretation is not time-tested, our review is plenary. See, e.g., id., 600.

Whether § 29-28 (b) automatically bars an applicant from obtaining a pistol permit based on an out-of-state misdemeanor conviction presents a question of statutory interpretation. We review § 29-28 (b) in accordance with General Statutes § 1-2z and our familiar principles of statutory construction. See, e.g., *Vincent* v. *New Haven*, 285 Conn. 778, 784–85, 941 A.2d 932 (2008). Section 29-28 (b) authorizes the issuance of pistol permits in Connecticut under specified conditions. It provides in relevant part: "Upon the application of any person having a bona fide permanent residence within the jurisdiction of any such authority, such chief of police, warden or selectman may issue a temporary state permit[4] to such person to carry a pistol or revolver within the state, provided such authority shall find that . . . such person is a suitable person to receive such permit. No state or temporary state permit to carry a pistol or revolver shall be issued under this subsection if the applicant

---

[4] Following the issuance of a temporary pistol permit, "the local authority shall forward the original application to the [Commissioner of Emergency Services and Public Protection]. Not later than sixty days after receiving a temporary state permit, an applicant shall appear at a location designated by the commissioner to receive the state permit. The commissioner may then issue, to any holder of any temporary state permit, a state permit to carry a pistol or revolver within the state." General Statutes § 29-28 (b).

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

. . . (2) has been convicted of (A) a felony,[5] or (B) on or after October 1, 1994, a violation of section 21a-279 or section 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-96, 53a-175, 53a-176, 53a-178 or 53a-181d . . . .'' (Footnotes added.) General Statutes § 29-28 (b).

The first sentence of § 29-28 (b) gives the issuing authority the power to issue a pistol permit to an applicant only if the authority determines that such applicant is "a suitable person to receive such permit," which is a factual determination to be made by the issuing authority. See, e.g., *Smith's Appeal from County Commissioners*, 65 Conn. 135, 138, 31 A. 529 (1894) (explaining that determination as to whether given person is suitable "depends [on] facts and circumstances that may be indicated but cannot be fully defined by law, whose probative force will differ in different cases, and must in each case depend largely [on] the sound judgment of the selecting tribunal"); see also, e.g., *Commissioner of Public Safety* v. *Board of Firearms Permit Examiners*, 129 Conn. App. 414, 419, 21 A.3d 847 (noting that issuing authority has discretion to deny firearms permit "if it finds that the applicant . . . is unsuitable to hold such a permit"), cert. denied, 302 Conn. 918, 27 A.3d 369 (2011). The statute goes on to identify certain classes of persons who are unsuitable per se, namely, those who have been convicted of a felony or any of the eleven offenses listed in § 29-28 (b) (2) (B).

Significantly, the eleven enumerated automatic disqualifiers are all Connecticut statutory provisions. Section 29-28 (b) (2) (B) makes no reference to out-of-state equivalent offenses and does not contain language providing that applicants who have committed out-of-

[5] We note that, pursuant to federal law, it is unlawful for a person convicted of a felony to possess a firearm. See 18 U.S.C. § 922 (g) (2018) ("[i]t shall be unlawful for any person . . . who has been convicted *in any court* of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess . . . any firearm" (emphasis added)).

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

state crimes that have the same essential elements as the crimes enumerated in § 29-28 (b) (2) (B) shall be statutorily barred from obtaining a pistol permit in Connecticut. We find this omission significant, particularly in light of the fact that the legislature has previously used such explicit language in other Connecticut statutes to incorporate equivalent out-of-state convictions. See, e.g., General Statutes § 14-227a (g) (in context of driving under influence statute, "*a conviction in any other state of any offense the essential elements of which are determined by the court to be substantially the same as* [*certain provisions*] *of this section . . .* shall constitute a prior conviction for the same offense" (emphasis added)); General Statutes § 17b-750 ("[n]o child care subsidy shall be paid to an unlicensed child care provider if such provider has been convicted of any crime involving sexual assault of a minor or serious physical injury to a minor or any crime committed in *any other state or jurisdiction the essential elements of which are substantially the same as such crimes*" (emphasis added)); General Statutes § 38a-660 (n) (insurer or agent must notify Insurance Commissioner in writing upon learning that "surety bail bond agent has been arrested for, pleaded guilty or nolo contendere to, or been found guilty of, *a disqualifying offense in this state or an offense in any other state for which the essential elements are substantially the same as a disqualifying offense*" (emphasis added)); General Statutes § 46b-59b ("no court shall make an order granting the right of visitation to a parent who has been convicted of murder under [enumerated sections of the Connecticut General Statutes], or *in any other jurisdiction, of any crime the essential elements of which are substantially the same as any of such crimes*" (emphasis added)); General Statutes § 53a-40 (a) (1) (defining "persistent dangerous felony offender" as individual who stands convicted of certain crimes and was pre-

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

viously convicted of certain crimes enumerated in specific provisions in Connecticut General Statutes, or "*in any other state, any crimes the essential elements of which are substantially the same as any of the crimes*" (emphasis added)); General Statutes § 54-56g (a) (1) (providing that certain individuals are per se ineligible for pretrial alcohol education program, including persons who have been convicted of certain violations of Connecticut General Statutes and persons "*convicted in any other state at any time of an offense the essential elements of which are substantially the same as* [*those enumerated in Connecticut statutes*]" (emphasis added)).

Because the legislature has explicitly stated in other Connecticut statutes that out-of-state equivalent statutes must be considered, we conclude that the absence of such language in § 29-28 (b) (2) (B) indicates that the legislature intended only for the enumerated Connecticut statutory provisions to stand as a per se bar to obtaining a pistol permit in Connecticut. See, e.g., General Statutes § 1-2z (requiring courts to consider statute *in relationship to other statutes* to discern its meaning); *Dept. of Public Safety* v. *State Board of Labor Relations*, supra, 296 Conn. 605 (it is well settled that "[this court is] not permitted to supply statutory language that the legislature may have chosen to omit" (internal quotation marks omitted)). Had the legislature intended for issuing authorities to consider out-of-state equivalent convictions, it could have said so expressly, as it did in the aforementioned statutes. See, e.g., *Dept. of Public Safety* v. *State Board of Labor Relations*, supra, 605–606; *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 851, 937 A.2d 39 (2008); *Stitzer* v. *Rinaldi's Restaurant*, 211 Conn. 116, 119, 557 A.2d 1256 (1989). Reading the enumeration of automatic disqualifiers to include out-of-state equivalent convictions "would contravene the doctrine of expressio unius est exclusio

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

alterius—the expression of one thing is the exclusion of another—[under which] we presume that when the legislature expresses items as part of a group or series, an item that was not included was deliberately excluded."[6] (Internal quotation marks omitted.) *Mayer* v. *Historic District Commission*, 325 Conn. 765, 776, 160 A.3d 333 (2017). Applying these principles, we decline to read an equivalency provision into § 29-28 (b) (2) (B) when the legislature did not include such a provision and, accordingly, conclude that a conviction of a felony or of only those enumerated Connecticut offenses constitutes a per se bar to obtaining a pistol permit in Connecticut.

At oral argument before this court, the police department conceded that the language of § 29-28 (b) is "clear

[6] We acknowledge that, like all canons of construction, the expressio unius est exclusio alterius canon is not always useful in deciphering the legislature's intent. See, e.g., *In re William D.*, 284 Conn. 305, 312–13 n.6, 933 A.2d 1147 (2007). In the present case, the police department argues that the canon is inapplicable to our interpretation of § 29-28 (b) because the circumstances do not support an inference that the terms left out, namely, out-of-state equivalent convictions, were meant to be excluded. See, e.g., *National Labor Relations Board* v. *SW General, Inc.*, U.S. , 137 S. Ct. 929, 940, 197 L. Ed. 2d 263 (2017). We disagree.

In order for the expressio unius canon to apply to a statutory listing or grouping, "the items expressed [must be] members of an associated group or series . . . ." (Internal quotation marks omitted.) *Barnhart* v. *Peabody Coal Co.*, 537 U.S. 149, 168, 123 S. Ct. 748, 154 L. Ed. 2d 653 (2003). In this case, the automatic disqualifiers enumerated in § 29-28 (b) (2) (B) are members of an associated group; they are all Connecticut statutes. Furthermore, we conclude that the circumstances do support an inference that out-of-state equivalent convictions were meant to be excluded from § 29-28 (b) (2) (B), given that the General Statutes are replete with provisions in which the legislature included out-of-state equivalency language. See, e.g., *Mayer* v. *Historic District Commission*, 325 Conn. 765, 777, 160 A.3d 333 (2017) ("[I]t is well settled that the legislature . . . is presumed to have acted with knowledge of existing statutes and with an intent to create one consistent body of law. . . . The General Assembly is always presumed to know all the existing statutes and the effect that its action or [lack thereof] will have [on] any one of them. And it is always presumed to have intended that effect which its action or [lack thereof] produces." (Internal quotation marks omitted.)).

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

on paper'' but nevertheless contends that reading the provision as barring applicants who were convicted of only the eleven enumerated offenses—and not their out-of-state equivalents—from receiving a pistol permit would lead to ''bizarre and unworkable results,'' as it would result in differential treatment of defendants who pose the same risk to the public. The police department, quoting the trial court's memorandum of decision, further argues that such an interpretation ''would allow persons who engaged in prohibited controlled substance abuse to receive pistol permits, thereby failing to protect the public from the dangers sought to be eliminated by the legislature pursuant to the statute. The foregoing interpretation would be discriminatory because it would discriminate against persons who were convicted [for] violating § 21a-279 in Connecticut, while favoring persons who were convicted [for] identical behavior in any of the forty-nine other states. Lastly, the foregoing interpretation would be dangerous because it would not limit the danger associated with providing pistol permits to people known to abuse controlled substances.'' (Internal quotation marks omitted.) We are not persuaded.

In choosing not to extend the automatic disqualification parameters to include outside jurisdictions, our legislature may reasonably have intended to treat in-state and out-of-state convictions differently because it is aware of the significance of a conviction under the eleven specific statutes set forth in § 29-28 (b) (2) (B), and how such a conviction reflects on the applicant's suitability for licensure. For example, in Connecticut, persons charged with a violation of § 21a-279 may be eligible for a pretrial drug education and community service program; see General Statutes § 54-56i (a); and, upon successful completion, the charges against them are dismissed. See General Statutes § 54-56i (f). Indeed, a defendant may be eligible for participation in this

program multiple times before facing a conviction. See General Statutes § 54-56i (b). Thus, a conviction may reflect a kind of recidivism that the legislature deemed disqualifying in the context of firearm licensure. Our legislature may not have possessed the same certitude with respect to out-of-state, nonfelony convictions, and so decided to leave suitability determinations regarding those crimes to a case-by-case basis. There is significant divergence, after all, in each state's penal laws and accompanying statutory, plea bargaining and sentencing schemes, and a conviction for a violation of any one of the eleven enumerated statutes in Connecticut can carry very different implications than a conviction for the same conduct in another jurisdiction. This is because the laws of each state reflect the values, beliefs, and judgments of the people of that state, codified by the state's legislature. See, e.g., *State* v. *DiPaolo*, 88 Conn. App. 53, 59, 868 A.2d 98 ("[t]he various states have different [penal] laws that reflect their people's judgments"), cert. denied, 273 Conn. 935, 875 A.2d 544 (2005). Thus, a conviction under § 21a-279 in Connecticut, for example, may not hold the same weight or carry the same concerns in another jurisdiction.

Perhaps recognizing these variances in each states' laws, our legislature has chosen to exclude out-of-state equivalency language in similar statutory schemes. For example, General Statutes § 14-111, which governs the suspension or revocation of a motor vehicle operator's license, provides separate channels through which the Commissioner of Motor Vehicles may suspend an operator's license. Subsection (a) gives the commissioner the authority to suspend or revoke an individual's motor vehicle operator's license "for any cause that he deems sufficient . . . ." General Statutes § 14-111 (a). Subsection (b) enumerates certain offenses that, upon conviction, result in the automatic suspension of an individual's motor vehicle operator's license for a speci-

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

fied period of time. See General Statutes § 14-111 (b).[7] Like the list of Connecticut crimes in § 29-28 (b) (2) (B), the provision at issue in the present appeal, the enumerated list of Connecticut offenses in § 14-111 (b) does not contain out-of-state equivalency language. When confronted with the issue of whether an out-of-state conviction is a ground for the suspension of an operator's license in Connecticut, this court answered in the affirmative, stating that an out-of-state conviction can be considered as part of the commissioner's discretionary authority to suspend an individual's motor vehicle operator's license "for any cause that he deems sufficient." (Internal quotation marks omitted.) *Hickey* v. *Commissioner of Motor Vehicles*, 170 Conn. 136, 139–40, 365 A.2d 403 (1976) (quoting General Statutes (Rev. to 1973) § 14-111 (a)), overruled in part on other grounds by *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, 270 Conn. 778, 855 A.2d 174 (2004). We did not, however, conclude that an out-of-state conviction is, per se, grounds for such suspension and must, in all circumstances, be analyzed and evaluated in the same manner as an equivalent Connecticut conviction. See id., 142–43. Instead, we left it to the discretion of the relevant authority—in that case, the commissioner—to fashion an appropriate remedy. Id., 142.

Although not a per se bar to the issuance of a pistol permit in Connecticut, an out-of-state conviction nevertheless may still be considered as part of the issuing authority's suitability determination. As we explained, in order to be issued a pistol permit in Connecticut, § 29-28 (b) requires, among other things, that the issuing

---

[7] For example, General Statutes § 14-111 (b) (1) provides in part: "For a first violation of subsection (a) or subdivision (1) of subsection (b) of section 14-224 or section 14-110, 14-215 or 53a-119b, for a period of not less than one year and, for a subsequent violation thereof, for a period of not less than two years . . . ."

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

authority conclude that a given applicant is suitable. The legislature has determined that certain applicants, namely, those persons who have been convicted of a felony, or an offense in violation of § 21a-279 or General Statutes §§ 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-96, 53a-175, 53a-176, 53a-178 or 53a-181d, are unsuitable per se. See General Statutes § 29-28 (b) (2). Individuals who are not unsuitable per se may, nevertheless, be denied a pistol permit if the issuing authority determines, in exercising its discretion, that such person is unsuitable. See, e.g., *Commissioner of Public Safety* v. *Board of Firearms Permit Examiners*, supra, 129 Conn. App. 419. Neither party disputes that the issuing authority may consider an out-of-state conviction as part of its discretionary suitability determination. In this case, the police department made this very argument. When the police department changed its position—from arguing that the defendant's New York conviction automatically disqualified him from obtaining a permit pursuant to § 29-28 (b) (2) (B) to contending that the defendant was unsuitable—the board proceeded on the suitability theory; most of its questioning, to that end, centered on the defendant's New York conviction. Thus, although the issuing authority may not treat an out-of-state conviction as a per se bar, it is within its province to consider any conviction that has not been specifically enumerated by our legislature in § 29-28 (b) (2) (B) as part of its discretionary suitability determination. We therefore reject the police department's contention that reading § 29-28 (b) by its clear and unambiguous terms to bar out-of-state equivalency comparisons would lead to bizarre or unworkable results.

The police department also argues that the defendant's interpretation of § 29-28 (b) is inconsistent with an entirely separate provision, General Statutes § 29-32, which is located in the same chapter of the General Statutes as § 29-28. Section 29-32 deals with, among

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

other things, the revocation of *existing* pistol permits and not, like § 29-28 (b), the issuing of permits. Relevant to the police department's argument, subsection (a) defines a "conviction" as "the entry of a judgment of conviction by any court of competent jurisdiction." General Statutes § 29-32 (a). Subsection (b) provides in relevant part that a pistol permit shall be revoked by the Commissioner of Emergency Services and Public Protection "upon conviction of the holder of such permit of a felony or of any misdemeanor specified in subsection (b) of section 29-28 . . . ." General Statutes § 29-32 (b). The police department argues that, "if [this court] were to accept the defendant's limited interpretation of the 'automatic disqualifiers,' there would be no need to define 'conviction' in § 29-32 (a)" because "the only court of competent jurisdiction with respect to 'any misdemeanor specified in subsection (b) of section 29-28' would be in Connecticut . . . ." (Emphasis omitted.) To avoid an interpretation that would render the definition of "conviction" in § 29-32 (a) meaningless, the police department argues, we must read § 29-28 (b) as incorporating equivalent misdemeanor convictions from extraterritorial courts of "competent jurisdiction." We disagree.

The police department's argument regarding the statutory definition of "conviction" is flawed in two important respects. First, the police department focuses only on the latter portion of the definition of conviction, namely, "any court of competent jurisdiction," at the expense of the first portion of the definition, "the entry of a judgment of conviction . . . ." General Statutes § 29-32 (a). The import of the definition of "conviction," as set forth in § 29-32 (a), is that a state permit for carrying a pistol or revolver may be revoked only *once a judgment of conviction is rendered*. See General Statutes § 29-32 (b). Second, even focusing squarely on the language "any court of competent jurisdiction," the defini-

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

tion of "conviction" in § 29-32 (a) would not be rendered superfluous if Connecticut courts are the only courts of "competent jurisdiction" to render a judgment of conviction of any offense specified in § 29-28 (b). Plainly, a family court or probate court in Connecticut, for instance, would not be of "competent jurisdiction" to render a judgment of conviction of any of the enumerated offenses in § 29-28 (b) (2) (B). Cf. *Levin* v. *State*, 329 Conn. 701, 706, 189 A.3d 572 (2018) ("[a] court lacks discretion to consider the merits of a case over which it is without jurisdiction" (internal quotation marks omitted)). In sum, we reject the police department's interpretation of § 29-28 (b) (2) (B) and decline to read an equivalency provision into the statute. We conclude that only a felony conviction or a conviction of those offenses enumerated in § 29-28 (b) (2) (B) constitutes a per se bar to obtaining a state pistol permit.

We cannot say with certainty why the legislature chose not to include an equivalency provision in that statute, but what we can say with certainty is that the policy decision to incorporate such an equivalency provision rests with that branch of government, not this one. See, e.g., *Castro* v. *Viera*, 207 Conn. 420, 435, 541 A.2d 1216 (1988) ("[I]t is up to the legislatures, not courts, to decide on the wisdom and utility of legislation. . . . [C]ourts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws." (Internal quotation marks omitted.)).

II

We turn, next, to the defendant's claim that the trial court improperly substituted its judgment for that of the board, following the board's determination—after a full hearing—that the defendant was a suitable person to obtain a pistol permit. We agree with the defendant.

As we have explained, judicial review of an administrative decision in an appeal under the UAPA is limited.

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

See, e.g., *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000). "According to our well established standards, [r]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *State Board of Labor Relations*, supra, 296 Conn. 598–99.

"The 'substantial evidence' rule governs judicial review of administrative fact-finding under the UAPA." *Dolgner* v. *Alander*, 237 Conn. 272, 281, 676 A.2d 865 (1996). "An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

(Citations omitted; internal quotation marks omitted.) Id.

Our decisional law posits that the determination of whether a given applicant is suitable to hold a permit—save for the automatic disqualifiers listed in § 29-28 (b) (2)—depends largely on the sound judgment of the issuing authority, in the first instance, and the board, on appeal. See *Smith's Appeal from County Commissioners*, supra, 65 Conn. 138. Furthermore, although "suitable person" is not defined in § 29-28, "[t]he words 'suitable person' have a definite meaning in our law, and their use in the [statute] furnishes a standard by which the [agency] must be guided." *State* v. *Vachon*, 140 Conn. 478, 485, 101 A.2d 509 (1953). This court has previously defined a "suitable person" as one "who by reason of his character—his reputation in the community, his previous conduct as a licensee—is shown to be suited or adapted to the orderly conduct of a business which the law regards as so dangerous to public welfare that its transaction by any other than a carefully selected person duly licensed is made a criminal offense. It is patent that the adaptability of any person to such a business *depends* [*on*] *facts and circumstances that may be indicated* but cannot be fully defined by law, whose probative force will differ in different cases, and *must in each case depend largely* [*on*] *the sound judgment of the selecting tribunal.*" (Emphasis added.) *Smith's Appeal from County Commissioners*, supra, 138.

In light of the evidence in the record, we cannot say that the board acted unreasonably, arbitrarily, illegally or in abuse of its discretion in concluding that the defendant was a "suitable person" to receive a pistol permit. Although the board did not issue a written decision explaining the bases on which it determined that the defendant was suitable to receive a pistol permit, there

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

is substantial evidence in the administrative record to support its conclusion.

At the defendant's administrative hearing, members of the board extensively questioned the defendant about his 2006 conviction of possession of ketamine. The board asked the defendant several questions about his ketamine use and learned that the defendant had recreationally used ketamine as a "club drug" when he was a young man, twelve years prior. The defendant indicated that he used ketamine only three times and that he had never used any other drug. He also indicated that he does not drink alcohol. From the defendant's answers to the appellant questionnaire and the testimony adduced at the hearing, the board further learned that the defendant was then employed and had a family. As noted by the defendant's attorney, the board was also able to "judge [the defendant's] character by appearances, by voice, [and] by the way he tried to answer [its] questions as best he could without getting rattled or without becoming hostile . . . ." Thus, given the substantial evidence contained in the record to support the board's conclusion, we cannot conclude that the board acted unreasonably, arbitrarily, illegally or in abuse of its discretion when it determined that the defendant is a suitable person to hold a pistol permit.

The trial court nevertheless concluded that the board had abused its discretion when it found the defendant suitable, despite his conviction for possession of a controlled substance in New York, because it "did not properly consider . . . the legislative intent, the danger posed by providing pistol permits to persons known to abuse controlled substances, and the inappropriate differentiation between similarly situated applicants." We disagree.

Our review of the transcript of the defendant's administrative hearing reveals that the board did, in fact,

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

discuss these various considerations. Following the parties' closing remarks and prior to voting, one of the board members, who cast the sole vote against the defendant, stated: "The legislature in Connecticut has decided that certain misdemeanors would statutorily bar someone from having a pistol permit if they occurred after October 1, 1994. Now, I guess we have to ask ourselves, why did [it] do that? In my opinion . . . [the legislature] did it because the underlying behavior that would result [i]n those convictions is so egregious [that] someone should not have a pistol permit, and, in effect, they are unsuitable. Now, we go to New York, where the [defendant] in this case has committed the exact same behavior that would result in a disqualifying conviction in Connecticut, and just by the chance that it happened to be a few miles over the border, I don't see how we can say he is suitable. And my vote will . . . [be based on] the underlying behavior and the legislative intent that, [if] that behavior is unsuitable in Connecticut, to me, it is certainly unsuitable if it happens in another state."

The chairman of the board, in response to the aforementioned board member's comment, remarked: "I don't know what the legislative intent was to include [§ 21a-279] as an automatic disqualifier. And it very well may have been the underlying conduct which leads to that arrest and that conviction that the legislature is saying it makes a person unsuitable. But the burden, in that case, is on the legislature to clarify the language. We are required to make our findings based on the strict interpretation of the language, expressed language of all the statutes. And the language [of § 29-28 (b) (2) (B)], as I mentioned earlier, does not say these charges or their equivalent. And, if the legislative intent was to zero in on the underlying [conduct that] leads to the arrest and convictions of those automatic disqualifiers, the burden is on the legislature to say, 'or their equiva-

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

lent,' or some such language. . . . I do understand the argument that, if the legislature felt that the underlying conduct made the person disqualified, then we can infer from that that similar conduct in another jurisdiction is proof, or at least a prima facie argument, that a person is unsuitable. But all of those prima facie arguments are rebuttable, and the question is, on a case-by-case basis, whether they have been rebutted.''

Subsequently, another board member commented: ''[The] Connecticut legislature does not make law for the state of New York; the state of New York does not make legislation for the state of Connecticut. They are two separate, distinct, individual states with . . . sets of laws, rules and regulations.''

Despite the trial court's conclusion to the contrary, our review of the record indicates that the board considered—and explicitly discussed—the potential for different treatment of out-of-state offenders versus those convicted of similar crimes in Connecticut, the legislature's purpose in enacting § 29-28, and its own statutory interpretation analysis. Although the trial court, on the same record, may very well have come to a different conclusion than that of the board, we emphasize that ''[n]either this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact.'' *Dolgner* v. *Alander*, supra, 237 Conn. 280.

Finally, the police department argues that the board abused its discretion in determining that the defendant was suitable because the defendant's conduct demonstrates that he should not be entrusted with a weapon, particularly in light of his ''drug conviction and complete, utter inability to adequately explain to the board his responses to the board appellant questionnaire or respond to simple inquiries.'' The police department fur-

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

ther contends that the defendant's answers to questions posed by the board were "incomprehensible and/or contradictory," that the defendant "was not credible," and that the defendant "stumble[d] through . . . his direct examination at the hearing . . . ." We are not persuaded.[8]

The police department's argument on this point stems from the defendant's response to question 19 in the appellant questionnaire, which asked the applicant to state any additional facts that would support his case. The defendant answered: "My current employment requires travel to Brooklyn, [New York]. Additionally, I am married with [two] small children residing in a home with several other family members, therefore being away during the day from the home, it would be prudent and wise to be allowed to maintain a firearm in the home for protection, when I'm there." Members of the board expressed confusion regarding this response, and the chairman inquired: "If you're permitted, if this board votes in your favor, and you are permitted to carry a handgun, do you plan to carry that into Brooklyn, New York?" The defendant indicated that he did not, and the chairman asked: "Then why did you put that down here as additional facts which support your case?" The defendant replied that he "most likely just read the question wrong," and that his thoughts when answering the question were to "restat[e] that, you know, to have a firearm in the home, you know, for protection, not to carry it to work with me."

As we have explained, "it is the exclusive province of the trier of fact to make determinations of credibility . . . . Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a

---

[8] We note that, prior to the administrative hearing, the police department did not assess the defendant's suitability pursuant to its discretionary authority to make a suitability determination, as it based its denial of the defendant's permit solely on his New York conviction.

Stratford Police Dept. *v.* Board of Firearms Permit Examiners

reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude.'' (Internal quotation marks omitted.) *Frank* v. *Dept. of Children & Families*, 312 Conn. 393, 412, 94 A.3d 588 (2014). As the finder of fact in this case, determinations regarding the defendant's credibility were squarely within the province of the board. Despite the fact that the defendant's response to the appellate questionnaire, and subsequent explanation to the board, might appear confusing, we emphasize that the degree to which the board credited the defendant's responses to its questions, his candidness regarding the answers in his appellant questionnaire, and his overall comportment and demeanor are not for the trial court—or this court—to second-guess. See *Commissioner of Public Safety* v. *Board of Firearms Permit Examiners*, supra, 129 Conn. App. 424 (concluding that, when defendant's conduct did not fall within any of express statutory grounds for revocation or denial of firearms permit, and board determined that defendant was suitable person to hold firearms permit, for court, on appeal, to conclude that defendant's conduct demonstrated unsuitability per se ''would be to substitute [its] judgment for that of the board, which [an appellate tribunal] may not do''). We therefore disagree with the police department's contention that the board abused its discretion in finding that the defendant was suitable to obtain a pistol permit in Connecticut on this basis.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the defendant's appeal.

In this opinion the other justices concurred.